Citation Nr: 1434232 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 07-02 698 ) DATE
 )
 )
On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for a kidney disorder as secondary to hypertension. 

2. Entitlement to service connection for obstructive sleep apnea (OSA), to include as secondary to hypertension. 

3. Entitlement to service connection for a sleep disorder, other than OSA, not contemplated by the rating assigned for post-traumatic stress disorder (PTSD). 

4. Entitlement to an initial compensable rating for hypertension. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant
ATTORNEY FOR THE BOARD

J. Andrew Ahlberg, Counsel

INTRODUCTION

The Veteran served on active duty from July 1978 to January 1994, to include service in the Southwest Asia theater of operations during the Persian Gulf War from December 1990 to May 1991. 

This case was previously before the Board of Veterans' Appeals (Board) on appeal from a February 2005 rating decision by the above Department of Veterans Affairs (VA) Regional Office (RO). The case was remanded by the Board for additional development in April 2013, and pursuant to development requested therein, service connection for hypertension was granted in a July 2013 rating decision, thereby satisfying the appeal with respect to this claim. As will be explained herein, given the manner in which disability due to OSA-as opposed to other types of sleep disorders-is rated, and the post remand grant of service of connection for hypertension and its possible etiological relationship to OSA, the undersigned has found it more appropriate to consider the claim for service connection for OSA as a separate claim, as listed on the Title Page. 

In February 2013, the Veteran was afforded a videoconference hearing pursuant to the provisions of 38 U.S.C.A. § 7107(e). During this hearing, the undersigned Veterans Law Judge was located in Washington, D.C., and the Veteran was located at the RO. A transcript of this hearing is of record. 

The Board notes that, in addition to the paper claims file, the Veteran also has electronic Virtual VA and Veteran Benefits Management System (VBMS) paperless claims files. A review of the documents in Virtual VA file reveals VA clinical records not physically of record dated through April 4, 2013, documented to have been considered in the July 2013 supplemental statement of the case, as well as a September 2003 brief submitted by the Veteran's representative. Further, the Veteran's VBMS file does not contain any documents at this time. 

An August 2013 statement from the Veteran expressing dissatisfaction with the initial noncompensable rating for hypertension represents a notice of disagreement with respect to the assignment of this rating by the July 2013 rating decision, requiring a statement of the case (SOC) addressing the issue of entitlement to an increased initial rating for hypertension. Manlincon v. West, 12 Vet. App. 238 (1999). This issue, along with the claims for service connection for OSA and a kidney disability as secondary to hypertension, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

There is no current disability associated with a sleep disorder, other than OSA, not contemplated by the rating currently assigned for PTSD. 

CONCLUSION OF LAW

The criteria for service connection for a sleep disorder, other than OSA, not contemplated by the rating currently assigned for PTSD are not met. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.159, 3.309 (2013).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1). 

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial AOJ decision on the claim for VA benefits. 

In the instant case, the Board finds that VA has satisfied its duty to notify under the VCAA. Specifically, September and November 2004 letters, sent prior to the initial unfavorable decision issued in February 2005, advised the Veteran of the evidence and information necessary to substantiate his claim as well as his and VA's respective responsibilities in obtaining such evidence and information. While these letters did not advise him of the information and evidence necessary to establish a disability rating and an effective date in accordance with Dingess/Hartman, supra, as this decision will not result in a grant of service connection for a disability for which a rating or effective date need be assigned, this results in no prejudice to the Veteran. 

Relevant to the duty to assist, the Veteran's service treatment records (STRs) and post-service treatment records have been obtained and considered. The Veteran was also provided a VA psychiatric examination in May 2013 that is adequate to decide the issue on appeal. In this regard, the psychologist who conducted the examination considered all of the pertinent evidence of record, to include the statements of the Veteran, and provided a medical opinion as to whether the Veteran had any disability associated with a sleep disorder that is not currently a result of his service connected PTSD. Moreover, the examiner offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). The Board also finds the May 2013 VA psychiatric examination to be in compliance with the instructions of the April 2013 remand (wherein the instructions did not specifically request an opinion as to whether the Veteran had a disability due to OSA as a result of service.) Stegall v. West, 11 Vet. App. 268 (1998) (standing for the proposition that the Board is required to insure compliance with the instructions of it remands.) 

Additionally, as previously noted, in February 2013, the Veteran was provided an opportunity to set forth his contentions during a hearing before a Veterans Law Judge. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 

Here, during the February 2013 hearing, the Veterans Law Judge noted the issue on appeal. Also, information was solicited regarding the nature and etiology of any sleep disorders the Veteran may have, and whether they are related to his service connected PTSD or some other etiology. Therefore, not only was the issue "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. See Bryant, 23 Vet. App. at 497. 

Furthermore, based on the Veteran's hearing testimony, the Board remanded the case to obtain a VA examination that included an opinion as to whether the Veteran had a sleep disorder related to service that was not associated with the service connected PTSD. As noted in the preceding paragraphs, there has been substantial compliance with the remand directives with respect the claim adjudicated herein, and nothing gives rise to the possibility that evidence had been overlooked with regard to this claim. Therefore, the Board finds that, consistent with Bryant, there has been compliance with the duties set forth in 38 C.F.R. § 3.103(c)(2) with respect to the matter decided herein. 

In light of the above, the Board finds that VA has fully satisfied the duty to notify and assist with respect to the issue adjudicated in this decision. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case as to the issue adjudicated below, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claim decided herein. 

II. Legal Criteria/Analysis

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. 38 U.S.C.A. § 1112; 38 C.F.R. § 3.304. See also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)]. 

Alternatively, service connection may be established under 38 C.F.R. § 3.303(b) by (a) evidence of (i) the existence of a chronic disease in service or during an applicable presumption period under 38 C.F.R. § 3.307 and (ii) present manifestations of the same chronic disease, or (b) when a chronic disease is not present during service, evidence of continuity of symptomatology. 

The United States Court of Appeals for the Federal Circuit clarified that the law providing for awards of service connection on the basis of continuity of symptomatology is limited to "chronic" diseases listed under 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

A lay witness is competent to testify as to the occurrence of an in-service injury or incident where such issue is factual in nature. Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). In some cases, lay evidence will also be competent and credible on the issues of diagnosis and etiology. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Specifically, lay evidence may be competent and sufficient to establish a diagnosis where (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d at 1377; see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). A layperson is competent to identify a medical condition where the condition may be diagnosed by its unique and readily identifiable features. Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). Additionally, where symptoms are capable of lay observation, a lay witness is competent to testify to a lack of symptoms prior to service, continuity of symptoms after in-service injury or disease, and receipt of medical treatment for such symptoms. Charles v. Principi, 16 Vet. App 370, 374 (2002). 

When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011). Although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

With the above criteria in mind, the relevant facts and contentions will be summarized. A report of medical history completed in July 1993 shortly before service separation noted that he Veteran had "[f]requent trouble sleeping." After service, VA psychiatric treatment reports since as early as August 2004 reflect the Veteran's complaints of trouble sleeping associated with nightmares of his combat service in the Persian Gulf War. Reports from an August 1998 VA psychiatric examination-which resulted in the diagnosis of PTSD found to be sufficient for the grant of service connection for this disability in a September 1998 rating decision-showed the Veteran reporting a state of being of 'high and tense,' and only being able to sleep for three or four hours a night. 

At the hearing before the undersigned, the Veteran described such sleeping problems as awakening with sweat and a feeling of stress and chest tightness after a few hours of sleep. At the May 2013 VA psychiatric examination, the Veteran reported that when awakens from sleep, he has intrusive thoughts/flashbacks about traumatic events from service, and the examiner concluded that "the [V]eteran's sleep disorder is no more than a manifestation of his service connected PTSD." The record does not otherwise indicate that, aside from any OSA that the Veteran may or may not actually have (a matter addressed in the remand that follows), the Veteran has a disability due to a sleep disorder that is not the result of his service connected PTSD, and the Board finds the May 2013 opinion to be definitive as to the matter at hand. Nieves-Rodriguez; Stefl, supra. 

In short, PTSD is rated under a General Rating Formula for Mental Disorders, and under such formula, "chronic sleep impairment" is encompassed in a 30 percent rating for service-connected psychiatric disability. 38 C.F.R. § 4.130. Therefore, to grant service connection for a separate disability due to a sleep disorder, other than OSA, to include under the presumptions for "undiagnosed illness" under 38 U.S.C.A. § 1117 applicable to Veterans, as the claimant in the instant case, who served in the Southwest Asia theater of operations during the Persian Gulf War, would violate the rule against pyramiding. See 38 C.F.R. § 4.14 (providing that evaluation of the same symptoms under different diagnostic codes is to be avoided); see also Brady v. Brown, 4 Vet. App. 203, 206 (1993) ("the rating schedule may not be employed as a vehicle for compensating a claimant twice (or more) for the same symptomatology; such a result would overcompensate the claimant for the actual impairment of his earning capacity.") 

As for any assertion by the Veteran that he has disability due to a sleep disorder, aside from OSA, that is not contemplated by the rating assigned for PTSD, as a lay person, he is not competent to provide evidence as to such a complex question as to the etiology of such disability because such a question is not capable of lay observation. Therefore, the question of the etiology of an disability due to a sleep disorder may not be competently addressed by lay evidence, and any opinion by the Veteran as to the etiology of such disability is nonprobative evidence. 

Given the above, the Board finds that the preponderance of the evidence is against the claim for service connection for a sleep disorder, other than OSA, not contemplated by the rating assigned for PTSD. As such, the benefit of a reasonable doubt doctrine is not applicable with respect to this claim, and the claim must therefore be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, supra. 

ORDER

Service connection for a sleep disorder, other than OSA, not contemplated by the rating assigned for PTSD is denied. 

REMAND

Although the Board regrets the additional delay, a remand with respect to the remaining claims is necessary to ensure due process to the Veteran and/or, as appropriate, that there is a complete record upon which to decide a remanded claim so that he is afforded every possible consideration. 38 U.S.C.A. § 5103A (West 2002); 38 C.F.R. § 3.159 (2013). 

First with respect to the issue of entitlement to an initial compensable rating for hypertension, as indicated in the Introduction, the Veteran has submitted a notice of disagreement with respect to this matter. Therefore, the AOJ will be requested below to complete an SOC addressing this issue. Manlincon, supra. The Board emphasizes, however, that to obtain appellate review of this issue, a perfected appeal must be filed. See 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. §§ 20.200, 20.201, 20.202 (2013).

As for the issue of entitlement to service connection for a kidney disability, the VA examination completed in May 2013 pursuant to the April 2013 remand adequately addressed the matter of "direct" service connection for such disability. However, in light of the grant of service connection for hypertension subsequent to the April 2013 remand, and the Veteran's argument in August 2013 asserting that he has a kidney disability that has either been caused or aggravated by hypertension, a VA examination that includes an opinion as to whether the Veteran has a current kidney disability that was caused or aggravated by hypertension is necessary to fulfil the duty to assist. 38 U.S.C.A. § 5103A (d) (West 2002); 38 C.F.R. § 3.159(c)(4) (2013); McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). 

With regard to service connection for OSA, the record does not reflect a diagnosis of this condition, but the Veteran, to include in sworn testimony to the undersigned, has asserted lay observable symptoms, such as snoring and awakening after choking, typical of OSA. Disability due to OSA would not be contemplated by the rating assigned for PTSD, as such symptomatology would be rated under the criteria for respiratory, and not psychiatric, disability codified at 38 C.F.R. § 4.97, Diagnostic Code 6847. Thus, granting service connection for OSA would not violate the principle against pyramiding set forth at 38 C.F.R. § 4.14. As such, the Board finds that a VA examination to determine whether the Veteran has OSA and, if so, whether OSA is etiologically related to service or service connected hypertension is necessary to fulfil the duty to assist. 38 U.S.C.A. § 5103A (d) (West 2002); 38 C.F.R. § 3.159(c)(4) (2013); McLendon, supra. 

Finally, prior to arranging for further examinations, and to ensure that the record before each examiner is complete and that all due process requirements are met, the AOJ will also be requested below to afford the Veteran another opportunity to present information and/or evidence pertinent to the matters on appeal that have been remanded. 

Accordingly, the case is REMANDED for the following action:

1. Furnish to the Veteran and his representative an SOC with respect to the issue of entitlement to a compensable initial rating for hypertension, along with a VA Form 9, and afford them the appropriate opportunity to submit a substantive appeal perfecting an appeal as to this issue. 
The Veteran and his representative are hereby reminded that to obtain appellate review of this issue not currently in appellate status, a timely appeal must be perfected; that is (given the date of this remand), within 60 days of the issuance of the SOC. 

2. Request that the Veteran identify any outstanding VA or non-VA treatment records pertinent to the claims for service connection for a kidney disability and OSA. After securing any necessary authorization from him, obtain all records that the Veteran identified. All reasonable attempts should be made to obtain such records. If any records cannot be obtained after reasonable efforts have been made, issue a formal determination that such records do not exist or that further efforts to obtain such records would be futile, which should be documented in the claims file. The Veteran must be notified of the attempts made and why further attempts would be futile, and allowed the opportunity to provide such records, as provided in 38 U.S.C.A. § 5103A(b)(2) and 38 C.F.R. § 3.159(e). 

3. After completion of the requested development with respect to obtaining additional records, arrange for a VA examination that includes, based on review of the record, an opinion from the examiner as to whether it is at least as likely as not (i.e., there is a 50 percent or greater probability) that any kidney disorder is caused or aggravated by (i.e., permanently worsened beyond the natural progression of the disorder) the Veteran's service-connected hypertension. In making this determination, the physician is asked to distinguish the issue of (a) causation from (b) aggravation. 
If the opinion is to the effect that the service-connected hypertension did not cause, but aggravated, a kidney disability, the physician should identify, to the extent possible, the degree of kidney disability that is due to such aggravation.

The examiner should prepare a printed (typewritten) report setting forth the opinions and provide a complete rationale for all opinions and conclusions reached. The claims file, to include a copy of this remand, must be made available to and reviewed by the examiner. 

4. Also after completion of the requested development with respect to obtaining additional records, arrange for a VA examination for the purpose of determining whether the Veteran has OSA that is etiologically related to service or the service connected hypertension. All indicated tests to diagnose the condition, to include a polysomnogram or other appropriate sleep study, are to be accomplished. If such testing results in a diagnosis of OSA, the examiner should:

a) Offer an opinion to whether it is at least as likely as not (i.e., there is a 50 percent or greater probability) that a current disability due to OSA is etiologically related to service and, if not, 

b) Offer an opinion as to whether it is at least as likely as not (i.e., there is a 50 percent or greater probability) that OSA is caused or aggravated by (i.e., permanently worsened beyond the natural progression of the disorder) the Veteran's service-connected hypertension. In making this determination, the physician is asked to distinguish the issue of (a) causation from (b) aggravation. If the opinion is to the effect that the service-connected hypertension did not cause, but aggravated, OSA, the physician should identify, to the extent possible, the degree of disability due to OSA that is due to such aggravation.

The examiner should prepare a printed (typewritten) report setting forth the opinions and provide a complete rationale for all opinions and conclusions reached. The claims file, to include a copy of this remand, must be made available to and reviewed by the examiner. 

5. After the above has been completed, the AOJ must review the claims file and ensure that all of the foregoing development actions have been accomplished (to the extent possible) in compliance with this REMAND. See Stegall, supra. If any development is incomplete, appropriate corrective action must be implemented. If any examination report does not include adequate responses to the specific opinions requested, it must be returned to the providing examiner for corrective action.. 

6. After completing the requested actions, and any additional notification and/or development deemed warranted, adjudicate the claims for service connection for OSA, to include as secondary to hypertension, and a kidney disability as secondary to hypertension. If any benefit sought in connection with these claims is denied, furnish to the Veteran and his representative an appropriate supplemental statement of the case that includes clear reasons and bases for all determinations, and afford them the appropriate time period for response before the claims file is returned to the Board for further appellate consideration.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).


______________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs