Evelyn June NABB

v.

HAVEG INDUSTRIES, INC.

Superior Court of Delaware,
New Castle.

Dec. 23, 1969.

Gerald Z. Berkowitz, of Knecht, Greenstein & Berkowitz, Wilmington, for claimant.

B. Wilson Redfearn, of Tybout & Redfearn, Wilmington, for employer.

OPINION

CHRISTIE, Judge.

These are cross appeals from an order of the Industrial Accident Board. During the course of her employment as an extruding machine operator, claimant suffered what the Board found to be a 100% disability to her right hand and in addition she was found to have suffered a 50% loss of the use of her right arm.

Following the period during which claimant received total disability compensation, the Board awarded her the statutory compensation for 100% loss of the use of the right hand (220 weekly payments) and fifteen additional weekly payments for partial loss of the use of her right arm. Additional awards were made for injury to the back (thirty weekly payments) and for disfigurement) (forty-four weekly payments) but these awards do not require consideration on this appeal.

█ The computation for the partial loss of the use of her arm was arrived at by taking the maximum scheduled allowance for a 100% loss of the hand (220 weeks), and awarding an additional 50% of the remaining 30 weeks which would have been awarded under the statute had claimant suffered a complete loss of both arm and hand. This award was then translated into a percentage figure and inaccurately described as compensation for a 6% loss of the use of the right arm (6% x 250 weeks=15 weeks).

Both the claimant and the employer have appealed the award.

█ It is the position of the employer that the Board cannot make separate awards for an arm and a hand on the same side but must make a decision as to the member disabled and then make an appropriate percentage award. Thus, it is

the employer's position that if an arm is lost through amputation, a claimant cannot also collect a separate sum for the inevitable loss of the hand which accompanies it. I am of the opinion that the employer's position on the statute is essentially correct but I also find the award to be proper under the statute when it is viewed as an award for a 94% loss of the extremity, (235 weeks out of a possible award of 250 weeks).

■ It is the position of the claimant that she is entitled to a scheduled award for 100% loss of the use of her right hand (220 weekly payments) and in addition, an award for a percentage loss of the use of her right arm, (up to 250 weeks additional). I find this position to be based on an erroneous interpretation of the statute. I rule that the statutory reference to the loss of an arm (250 weeks compensation) is a reference to the loss of that entire extremity, and thus, no loss of a hand and arm from the same extremity can lead to an award under this section of the statute of more than 250 weekly payments. The pertinent parts of the statute read as follows:

"(a) For all permanent injuries of the following classes, the compensation to be paid regardless of the earning power of the injured employee after the injury shall be as follows:

For loss of a hand, 66⅔ percent of wages during 220 weeks;

For loss of an arm, 66⅔ percent of wages during 250 weeks;

For the loss of a foot, 66⅔ percent of wages during 160 weeks;

For the loss of a leg, 66⅔ percent of wages during 250 weeks;

For the loss of two or more of such members, not constituting total disability, 66⅔ percent of wages during the aggregate of the period specified for each." (19 Del.C. § 2326)

The statute appears to provide that where a person loses two of the specified members he may recover awards for each loss. However, because the term "arm" may apply to the arm alone or to the entire extremity, it is necessary to study the other parts of the section to determine what is meant by the word "arm" as used in this statute.

The other subsections of § 2326 involving specific members assist the Court to ascertain the legislative intent. They read as follows:

"(b) Amputation to the ankle or any part of the foot, not including the toes, shall be considered as the equivalent of the loss of a foot. Amputation above the ankle shall be considered as the loss of a leg.

(c) Total loss of the use of a hand, arm, foot, leg, or eye, shall be considered as the equivalent of the loss of such hand, arm, foot, leg or eye.

(d) In all other cases of permanent injury of the classes specified in subsection (2) of this section, or when the usefulness of a member or any physical function is permanently impaired the compensation shall bear such relation to the number of weeks stated in the schedule set forth in subsection (2) of this section as the disabilities bear to those produced by the injury named in the schedule.

(e) Unless the Board otherwise determines from the facts, the loss of both hands, or both arms, or both feet, or both legs or both eyes, or an injury to the spine resulting in permanent and complete paralysis of both legs, or both arms, or one leg and one arm, or an injury to the skull resulting in incurable imbecility or insanity, shall constitute total disability for work, to be compensated according to the provisions of section 2324 of this title.

Amputation between tthe palmer surface of the hand and the shoulder shall be

considered as the loss of an arm, and compensation shall be paid for such injury for a period of 250 weeks. Amputation for 50 percent of the palmer surface of the hand shall be considered as the loss of the hand and compensation shall be paid for a period of 220 weeks."

The language of the subsections indicates a legislative intent to avoid two separate scheduled compensation awards where one part of the body is necessarily lost because it is attached to another part, such as a foot lost with a leg to which it was attached, or a hand lost with an arm to which it is attached. The second paragraph of subsection (e) demonstrates that a loss shall be compensated for either as a loss of the hand *or* a loss of an arm, depending upon where amputation occurs. In subsection (b) there are corresponding provisions as to loss of a foot or ankle as related in a loss of a leg. Subsection (c) makes the total loss of use the equivalent of amputation of that member. These subsections show a legislative intent to prevent a pyramiding of compensation for losses from a single extremity by providing for a specified degree of loss which constitutes a loss of an arm and a specified degree of loss which constitutes a loss of a hand.

Thus, under this statutory scheme, the designated compensation for the loss of an arm includes compensation for the loss of that hand which is attached to the lost arm. A corresponding rule would apply to the loss of a "leg".

The statute would have been clearer if it had designated compensation "for the loss of an entire extremity (i. e., an arm and hand from the same extremity), 250 weeks". The statutory intent, however, is here clear enough to require that the statute be read as if so worded. The need for a redrafting and clarification of the language of many parts of this statute has often been noted by all those who must interpret it.

The holding in Magreta v. Ambassador Steel Company, 378 Mich. 689, 148 N.W.

2d 767 (1967) is pertinent here. Under a statute defining when an amputation shall be considered that of a foot or a leg, the Court held that, where the claimant, as a result of a compensable injury, had his foot amputated by surgical procedure and subsequently required a second amputation to just below his knee, he was entitled to the scheduled benefits for the loss of a leg rather than to two awards, one for the loss of a foot and the other for a partial loss of the leg. The Court indicated that any other construction would be absurd.

Since the scheduled compensation for the total loss of the extremity is 250 weekly payments, loss of less than the total calls for compensation in a lesser amount, but under the facts such compensation must be greater than the 220 weekly payments available to claimant for what is here a lesser included injury.

Thus, under the factual findings in this case, claimant is not entitled to recover the amounts designated in § 2326(a) for the loss of a hand (220 weeks) and in addition compensation for a partial loss of an arm (up to 250 weeks) for injury to the same extremity. Rather, the award must have reasonable relationship to the 220 weekly payments available for the total loss of the hand and the 250 weekly payments available for total loss of the entire extremity.

Subsections (a) and (d) of § 2326, when read together, indicate that a claimant is entitled to benefits for the loss of a member and for the impairment, without loss, of a member. Compensation for the latter "shall bear such relation to the number of weeks stated in the schedule set forth in subsection (a) of this section as the disabilities bear to those produced by the injury named in the schedule". The injury to claimant's arm and hand is a permanent impairment of the usefulness and physical function of a member which falls into one of the classes specified in § 2326 (a), i. e. an "arm" meaning, as used in the

statute, the entire extremity. The Board has arrived at the degree of loss by finding the hand a total loss and then using the ratio between the number of weeks additional compensation specified for a 100% loss of the entire extremity and the actual degree of disability to the portion of the extremity not already compensated for. The determination of such an additional award is authorized under § 2326(d).

In arriving at this award the Board has included, and correctly so, the award specified for the loss of the hand. The statutory scheme makes it clear that the total loss of a hand entitles a claimant to 220 weeks compensation and this is true whether the loss is calculated solely as the loss of a hand or the loss of a hand as part of a less than total loss of the entire extremity. The Board then awarded 15 weeks additional compensation for impairment of the arm. Such award obviously took into account that if the arm and hand had both been lost the award available under the statute would be only 30 weeks more than an award for the loss of the hand alone. The award was proper but confusion may have stemmed from describing this part of the award in terms of 6% of 250 weeks. Actually claimant's award amounted to 235 weekly payments for partial loss of use of the extremity.

Under the circumstances the Board came to a fair and just decision depending, as it had to, upon a poorly worded and difficult to interpret statute. The amount awarded bears a reasonable relationship to what would have been awarded for the loss of the entire extremity as compared to what would have been awarded for the loss of the hand alone. It would have been clearer if the award were stated in terms of an award of 235 weeks compensation for 94% impairment of the entire extremity but in any event the amount of the award is proper and the record supports the results reached.

Any other construction placed upon subsections (a) and (d) would lead to the absurd conclusion that compensation for total loss of an arm, including the hand, would be less than the compensation awarded for the loss of the hand and a partial loss of the arm. I cannot construe the statute to mean that the less drastic injury entitles the injured party to more compensation than would be available in the event of of total loss.

Other factual issues raised by the parties are resolved so as to be consistent with affirming the findings of the Board.

The decision of the Industrial Accident Board is affirmed. The appeal of each party is dismissed.

It is so ordered.