**George Wilbur BRADY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1497.**

United States Court of Veterans Appeals.

Feb. 17, 1993.

George Wilbur Brady, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Peter M. Donawick were on the pleadings for appellee.

Before MANKIN, HOLDAWAY and IVERS, Associate Judges.

MANKIN, Associate Judge:

Appellant, George Wilbur Brady, has noted this appeal of a May 7, 1991, Board of Veterans' Appeals (BVA or Board) decision that granted his claim for service connection for a psychiatric disorder, but denied service connection both for a gastrointestinal disorder and for headaches with dizziness. *George W. Brady*, BVA 91–14801 (May 7, 1991). The Court has jurisdiction of the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). We find that the relief sought by appellant—an award of service connection for the two disorders for which his claims were denied—would constitute pyramiding of benefits, a result that is precluded by Department of Veterans Affairs (VA) (formerly the Veterans' Administration) regulations. We conclude that, although appellant's claims are founded in part upon symptoms that include chronic gastrointestinal illness and headaches, the Board committed no prejudicial error by denying service connection for those physical disorders. Accordingly, we affirm the Board's decision.

## I. Background

George Wilbur Brady served in the United States Merchant Marine during World War II. Under the law in effect at the time of his discharge, such service, while undeniably hazardous, did not qualify appellant as a "veteran" for purposes of benefits administered by the VA. In 1988, the Secretary of the Air Force, acting in accordance with authority delegated to him by the Secretary of Defense, determined that the service of merchant seamen such as appellant would henceforth be considered "active duty" for VA purposes. *See* 53 Fed.Reg. 2775 (1988); 38 C.F.R. § 3.7(x)(15) (1991); *Spencer v. Derwinski*, 1 Vet.App. 125 (1991); *Schumacher v. Aldridge*, 665 F.Supp. 41 (D.D.C.1987) (granting summary judgment in favor of claims of former merchant seamen that the Secretary of the Air Force had unlawfully denied recognition of their active duty status in accordance with the GI Bill Improvement Act of 1977, Pub.L. No. 95–202, title IV, § 401(a), 91 Stat. 1449 (1988).

Although apparently healthy when he entered the Merchant Marine, appellant experienced a variety of health problems during his tour of duty. In May 1945, while serving as a cook, he was "attacked by sudden, severe pains of the head [and] loss of vision." R. at 7. The next day, he felt better; but after returning to duty the following day, he experienced another attack with symptoms described as "severe pain, loss of vision, delirious, ... partial loss of muscle control." *Id.* Following those initial episodes, appellant continued to experience severe migraine headaches. In September 1945, a physician recommended that he be discharged from duty for medical reasons. R. at 13. Despite his ill health, appellant worked as a butcher from 1946 until his retirement in 1982. Since his discharge from the Merchant Marine, he has been treated by numerous physicians for headaches, dizziness, loss of balance, nervousness, fatigue, and diarrhea. For the most part, however, appellant's doctors were unable to identify any specific underlying physical cause for his chronic symptomatology.

Appellant submitted a claim for service-connected disability compensation in May 1989. A VA physician, after examining appellant and reviewing his extensive medical history, recorded an "impression of psychosomatic problems," and noted: "It is obvious that this man has multiple problems which may have been studied by many excellent physicians without any definitive diagnosis." R. at 61–62. In November 1989, a rating board denied appellant's disability claims on the grounds that service medical records failed to establish

that his gastrointestinal disorder was incurred in service, and that the more recent VA medical examination did not reveal an existing chronic headache disorder. R. at 72, 80. He promptly filed a Notice of Disagreement and, to further support his claims, submitted additional medical records describing his symptomatology. In response, the VA scheduled the veteran for a psychiatric examination. In her report, Dr. Elizabeth Tully noted:

> The veteran does not meet DSM–3 criteria precisely [for] somatization disorders because at least 13 symptoms are not currently complained of from the criteria list. However, the veteran's complaints began before age 30 and have persisted for many years with no apparent organic pathology or with complaints grossly in excessive [sic] what might be expected from physical findings, and he has taken medications, seen physicians and altered his life style as a result. The veteran probably meets criteria for somatoform pain disorder or undifferentiated somatoform disorder, or psychological factors influencing physical condition or conversion disorder.

R. at 98. Dr. Tully further noted that, although during the examination the veteran claimed to experience depression as a result of his physical ailments, he had earlier stated that "the dizziness, headaches, diarrhea, were all part of the same problem—nerves." R. at 98–99. After considering this and other new evidence, the rating board again denied the claim in July 1990. R. at 105. In August 1990, the veteran testified at a personal hearing at the Salt Lake City, Utah, Regional Office. In the course of the hearing, his representative argued with considerable force that appellant's disabilities had never been adequately diagnosed in service, but that Dr. Tully's report provided a basis for awarding service connection for those disabilities

> under the appropriate rating schedule for psychoneurotic disorders. We also feel that the benefit of the doubt should be given this veteran for the very reason that evidence does show treatment in service for a condition, nervous condition

or medical condition of sorts associated with headaches.

R. at 124–25. Appellant's claim was again denied, and he submitted further medical evidence, including a January 14, 1991, letter from his private physician, Dr. Philip Roberts. Dr. Roberts stated that, based on his treatment of appellant since 1983, he had confirmed "two major medical problems" that he described as, first, "a progressive, peripheral neuropathy, primarily involving the lower extremities but also involving, to a lesser degree, the upper extremities," and second, "a chronic, malabsorptive type of diarrhea which appears to be due to chronic pancreatic insufficiency . . . of undetermined etiology." R. at 154. Dr. Roberts further stated:

> It is the opinion of the medical consultants evaluating him that his symptoms are not psychological, nor do I believe they were initially related to any type of psychologic or psychiatric disease. From what we know about these types of diseases, I would suspect that he probably had some sort of toxic or infectious insult many years ago which resulted in some sort of immunologic response that has been slowly progressive and remains as yet unidentified.

R. at 155.

The BVA issued its decision in the case on May 7, 1991. Following a lengthy review of the evidence, the Board noted that it

> must first determine whether the gastrointestinal problem and the problem with headaches and dizziness are due to an infection or toxin which the appellant acquired during his merchant marine service in World War II, or whether these claimed disorders are manifestations of a psychiatric disorder, for which he is also seeking service connection. In the opinion of the Board, notwithstanding Dr. Roberts' letter of January 1991, the headaches, dizziness, and diarrhea, along with other complaints, are somatic in nature and are related to the appellant's psychiatric problems. The Board, after having carefully reviewed all the medical evidence, believes there is no organic ba-

sis for these reported symptoms. Accordingly, service connection for a gastrointestinal disorder and for headaches with dizziness is denied.

*Brady*, BVA 91–14801, at 6–7. With respect to appellant's psychiatric disability claim, however, the Board determined:

[T]his is a case in which it must give the benefit of the doubt to the appellant. There is, in the Board's judgment, enough evidence to warrant a reasonable belief that the appellant has continually suffered from a somatoform disorder, starting with an acute episode in May 1945 and continuing to the present day. Accordingly, service connection for a psychiatric disorder is granted.

*Id.* Dissatisfied with such disposition of his claims, and without waiting for the VA to issue a rating decision in his case, appellant filed a timely notice of appeal in this Court.

## II. Pyramiding of Benefits

 As a wartime veteran, appellant is entitled to compensation for disability resulting from a personal injury suffered or disease contracted in line of duty. 38 U.S.C.A. § 1110. Pursuant to his statutory authority, the Secretary of Veterans Affairs has adopted a schedule of disability ratings. *See* 38 U.S.C.A. § 1155; *see generally* 38 C.F.R., Part 4. Congress has directed that this schedule "shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations." 38 U.S.C.A. § 1155. Implicit within such statutory language is the concept that the rating schedule may not be employed as a vehicle for compensating a claimant twice (or more) for the same symptomatology; such a result would overcompensate the claimant for the actual impairment of his earning capacity. In the field of workers' compensation law, such duplication has often been referred to as "pyramiding of benefits," "pyramiding of disabilities," or "pyramiding of compensation". *See, e.g., Franklin v. Workers' Compensation Appeals Bd.*, 79 Cal.App.3d 224, 249 n. 10, 145 Cal.Rptr. 22, 37 (1978) (distinguishing "pyramiding" of multiple disabilities flowing from a single accident from "overlapping" of disabilities resulting from successive accidents); *Nabb v. Haveg Industries, Inc.*, 265 A.2d 320 (Del.Super.Ct.1969); *Colorado Fuel and Iron Corp. v. Industrial Comm'n*, 151 Colo. 18, 379 P.2d 153 (1962); 82 Am.Jur.2d, *Workmen's Compensation* § 341 (1976). As in the instant case, situations may arise in which service connection for a claimant's disability is established, but the nature of the medical evidence is such that reasonable arguments may be made for rating the disability under two or more possible diagnostic codes. In such circumstances, the rating board or the BVA must weigh the evidence and make an informed choice as to which diagnostic code provides the most appropriate method for rating the veteran's disability. Recognizing the difficulties inherent in such circumstances, the VA has promulgated a regulation captioned "Avoidance of pyramiding," which provides: "The evaluation of the same disability under various diagnoses is to be avoided." 38 C.F.R. § 4.14.

 In *Washington v. Derwinski*, 1 Vet. App. 459, 465 (1991), a case involving a psychophysiological musculoskeletal disorder, this Court took note of 38 C.F.R. § 4.132, Psychological Factors Affecting Physical Condition, Diagnostic Codes 9500–11, Note (2), which states:

When two diagnoses, one organic and the other psychological or psychoneurotic, are presented covering the organic and psychiatric aspects of a single disability entity, only one percentage evaluation will be assigned under the appropriate diagnostic code determined by the rating board to represent the major degree of disability.

The above language is consistent with section 4.14, and is dispositive in this case. Whether or not Dr. Roberts' opinion that appellant suffers from a physical disorder, and not a psychological one, is correct, appellant may not be rated twice for the same symptoms. Because he has been granted service connection for a psychiatric disorder that, in the Board's view, is manifested in part by the physical symptoms for which he claims entitlement to compensa-

tion, appellant has suffered no cognizable legal injury. If the Regional Office ultimately assigns him a disability rating that he considers inadequate or an effective date for such rating with which he disagrees, he may appeal any such adverse decision to the Board and, if necessary, to this Court.

We note that the above-quoted provision of 38 C.F.R. § 4.132 requires the Board to determine which diagnosis presents "the major degree of disability." Here, we find that the Board satisfied this requirement by implicitly determining that appellant's psychiatric disability is the root cause of his physical symptomatology. Dr. Tully's report provides a plausible basis for such a determination; therefore, we find that the Board's conclusion on this point is not clearly erroneous, and we will not overturn it. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1991).

### III. Prejudicial Error

In reaching its conclusions, the Board stated: "In the opinion of the Board, notwithstanding Dr. Roberts' letter of January 1991, [appellant's symptoms] are somatic in nature and are related to [his] psychiatric problems." *Brady,* BVA 91–14801, at 7. From this statement, it is unclear whether the Board weighed *all* the medical evidence of record (such as Dr. Tully's report) in reaching this conclusion, or merely relied on its own medical judgment to refute Dr. Roberts' expert medical opinion, thus violating the rule of *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991) (in rejecting medical evidence, Board must point to a medical basis other than its own opinion). Ordinarily, in response to an error of such character, the Court would remand the case to allow the Board to reconsider the evidence and issue a properly formed decision. *See, e.g., Bailey v. Derwinski,* 1 Vet.App. 441, 447 (1991); *Godwin v. Derwinski,* 1 Vet. App. 419, 426–27 (1991); *Colvin,* 1 Vet. App. 171. In this case, however, a remand is unnecessary. Even if the Board may have erred by improperly discounting Dr. Roberts' opinion, such error was not ultimately prejudicial to appellant's claim in view of Dr. Tully's report. *See* 38 U.S.C.A. § 7261(b) ("[T]he Court shall take due ac-

count of the rule of prejudicial error."); *Soyini v. Derwinski,* 1 Vet.App. 540, 546 (1991); *Godwin,* 1 Vet.App. at 427; *Thompson v. Derwinski,* 1 Vet.App. 251, 253 (1991).

■ In his informal brief, appellant suggests that the VA failed to provide him with adequate assistance in obtaining his medical records from the years 1945 to 1947, and also (despite contrary evidence in the record) failed to conduct a physical examination in evaluating his claim. *See* 38 U.S.C.A. § 5107(a) (where a veteran submits a well grounded claim, "[t]he Secretary [of Veterans Affairs] shall assist such a claimant in developing the facts pertinent to the claim."); *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). Inasmuch as the VA has yet to render any rating decision in the case, appellant has not yet exhausted his administrative remedies. *See Mokal v. Derwinski,* 1 Vet.App. 12, 15 (1990). He would not be entitled to relief on such grounds unless and until the VA assigns him a disability rating with which he disagrees, and then only by first appealing the rating decision to the BVA. Consequently, we need not—indeed, we *may* not—consider at this time the question of whether the Secretary has complied with his duty to assist. Further, the record indicates that appellant underwent a VA physical examination in August 1989. R. at 61. Again, the question of the existence or adequacy of that examination is not presently ripe for review by this Court.

### IV. Conclusion

For the reasons stated above, the BVA decision appealed from is AFFIRMED.