Citation Nr: 1448555 
Decision Date: 10/31/14 Archive Date: 11/05/14

DOCKET NO. 11-23 410 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUE

Entitlement to an evaluation in excess of 10 percent for residuals of a compound, comminuted fracture of a sesamoid bone in the right foot from March 19, 2008.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

K. Hubers, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1950 to October 1952.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from May 2009 and July 2010 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, the Commonwealth of Puerto Rico, which denied an increased rating for a right foot disability and varicose veins of the right leg, as well as SMC , respectively.

The Veteran requested a hearing before a Veterans Law Judge on his formal appeal (VA Form 9) dated August 20, 2011. He withdrew his request for a Board hearing in a signed statement dated January 9, 2012. The Board may proceed to the merits without a hearing. 38 C.F.R. § 20.702(e) (2014).

This matter was previously before the Board in August 2012 and the Board, in relevant part, denied a rating in excess of 10 percent for residuals of a compound, comminuted fracture of a sesamoid bone in the right foot. The Veteran appealed only the claim of entitlement to an increased rating for the right foot disability to the United States Court of Appeals for Veterans Claims (CAVC or Court). The Court issued a June 2014 Memorandum Decision setting aside the Board's August 2012 decision with respect to that issue and remanding the matter to the Board for readjudication. In that decision, the Court determined that the Board had failed to provide adequate reasons and bases for its determination that a disability rating in excess of 10 percent is not warranted under Diagnostic Code (DC) 5284 and its determination that 38 C.F.R. § 4.56 is not for application. The Court remanded the matter for further proceedings consistent with the Court's June 2014 Memorandum Decision, therefore, the Board will readjudicate the matter as instructed.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).


 (CONTINUED ON NEXT PAGE)



FINDING OF FACT

Residuals of a compound, comminuted fracture of a sesamoid bone in the right foot were manifested by severe impairment from March 19, 2008 through the remainder of the appeal period.


CONCLUSION OF LAW

The criteria for an evaluation of 30 percent, but no more, for residuals of a compound, comminuted fracture of a sesamoid bone in the right foot have been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.10, 4.56, 4.104, DC 5284 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Board has again thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

I. Veterans Claims Assistance Act of 2000 (VCAA)

As noted in the Introduction, this decision is being issued pursuant to a remand from the CAVC. The Board provided a detailed discussion, in its August 2012 decision, of VA's compliance with the duties to notify and assist set forth in the VCAA and implementing regulations. The relevant facts and conclusions will not be repeated here, but are incorporated by reference. On appeal to the CAVC, the Veteran did not allege any deficiencies in compliance with the duty to notify or assist, the CAVC found none, and, after again reviewing the record, the Board has determined that VA has completely satisfied its duties to notify and assist.

The Board notes that the Veteran has expressly argued that further development is not permitted. The CAVC did not resolve the issue, but the Board's conclusion that further development is unnecessary is consistent with the Veteran's stated position. In reaching this determination, the Board is persuaded by the same facts highlighted by the Veteran on appeal. Specifically, as discussed in more detail below, the portion of the Veteran's right foot affected by the service-connected disability was amputated in December 2009, so any additional examination cannot provide additional information regarding the current severity of functional and anatomical effects of the service-connected condition, including, but not limited to, the existence of muscle atrophy in the removed interosseous muscles. See, e.g., Appellant's Brief to the CAVC at pp. 18-20.

For all the foregoing reasons, the Board finds the VA satisfied its duties to notify and assist.



II. Increased Ratings

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in the VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3. The Veteran's entire history is reviewed when making disability evaluations. See generally, 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991).

Where, as in the present case, entitlement to compensation has already been established and increase in disability rating is at issue, present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Therefore, although the Board has thoroughly reviewed all evidence of record, the more critical evidence consists of the evidence generated since the most recent rating decision. Further, the Board must evaluate the medical evidence of record from the time period one year before the claim was filed until VA makes a final decision on the claim and consider the appropriateness of a "staged rating" (i.e., assignment of different ratings for distinct periods of time, based on the facts). See Hart v. Mansfield, 21 Vet. App. 505 (2007). The matter on appeal arises from a claim received by the VA on March 19, 2009, so the relevant period on appeal is March 19, 2008, until the present. 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervations, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.40, 4.45; see also DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995). The factors involved in evaluating and rating disabilities of the joints include weakness, fatigability, incoordination, restricted or excess movement of the joint, or pain on movement. 38 C.F.R. § 4.45.

Diagnostic Code 5284 assigns a 10 percent rating for a moderate foot injury; a 20 percent rating for a moderately severe foot injury, and a 30 percent rating for a severe foot injury. With actual loss of use of the foot, a 40 percent rating will be assigned. See 38 C.F.R. § 4.71a, Diagnostic Code 5284.

The words slight, moderate, moderately severe, marked, and severe as used in the various diagnostic codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence in reaching a decision that is "equitable and just." 38 C.F.R. § 4.6.

Also, the Court explicitly directed the Board to discuss the potential applicability of 38 C.F.R. § 4.56. Section 4.56(a) provides:

An open comminuted fracture with muscle or tendon damage will be rated as a severe injury of the muscle group involved unless, for locations such as in the wrist or over the tibia, evidence establishes that the muscle damage is minimal.

In addition, section 4.56(c) specifies that "the cardinal signs and symptoms of muscle disability are loss of power, weakness, lowered threshold of fatigue, fatigue-pain, impairment of coordination and uncertainty of movement."




Medical History of Service-Connected Right Foot Disability

On August 4, 1951, the Veteran was cleaning his rifle when it accidentally discharged, resulting in gunshot wound to his right foot. The service medical records document a gunshot entry wound at the first metatarsal and exiting in the 4th interdigit space. Contemporaneous imaging studies confirm a bone injury: "Fracture, compound, comminuted. Sesamoid bone, right foot. No artery or nerve involvement."

The Veteran did not obtain service connection for residuals of this in-service injury until June 1980, when service connection was granted and the residuals were rated as noncompensable pursuant to 38 C.F.R. § 4.71a, DC 5284, for other foot injuries. A June 1981 VA examination documented an X-ray showing a questionable old fracture of the sesamoid bone on the lateral aspect of the head of the first metatarsal. Later imaging studies, such as an April 1991 VA radiology report, also confirm that the affected sesamoid bone was "at the left distal end of the 1st metatarsal bone."

Notably, the Veteran was later granted a 10 percent rating, effective March 11, 1991, pursuant to DC 5284 for his right foot disability.

Later treatment records, at least through early 2008, do not indicate significant worsening of the Veteran's right foot condition. For instance, a February 2008 VA primary care podiatric note includes the results of a detailed examination of the Veteran's feet. The report reveals no difference in condition between the two feet and documented normal range of motion. The abnormalities noted include decreased pedal pulses in both feet, dryness, callouses, bunions, and onychomycosis of the toenails. The examiner did not assess, however, any muscle abnormalities and did not have available recent imaging studies.

In connection with his March 2009 claim, the Veteran underwent an April 2009 VA examination of his right foot. The Veteran identified his symptoms as limited toe movements, numbness, pain, stiffness, weakness, and lack of endurance. The pain and lack of endurance were specifically associated with the forefoot and the reported stiffness was associated with the forefoot and toes. The physical exam revealed no evidence of painful motion, swelling, instability, weakness, or abnormal weight-bearing. There was tenderness in the fore and midfoot at the metatarsal area. The examiner found atrophy in the interosseous muscles of the right foot, but not the left foot. Imaging results did not reveal any "acute fracture-dislocation or posttraumatic deformity of the foot." The examiner opined that the right foot fracture prevented exercise and sports, had a severe impact on shopping and recreation, and had a moderate, mild, or no impact on other activities of daily living (including driving and chores). The examiner indicated that the right foot disability resulted in an inability to stand for more than a few minutes and an inability to walk more than a few yards. The examiner also noted that the Veteran's need to use a cane was the result of peripheral neuropathy. The Veteran exhibited a slow, antalgic gait.

As discussed by the Board in its August 2012 decision, and noted by the Court in its June 2014 Memorandum Decision, the Veteran underwent, on December 19, 2009, a transmetatarsal amputation of his right foot due to nonservice-connected complications. See also December 18, 2009 Operation Report. A December 2009 pathology report describes "an amputated 1/3 distal right foot segment at the metatarsal area." As noted in the Appellant's Brief to the Court filed by the Veteran's representatives, "the forefoot of Veteran's right foot was removed in a transmetatarsal amputation" and, consequently, "the previously atrophied interosseous muscle (or at least [] part of it) had been removed." See also Appellant's Reply Brief (arguing that further examination of the right foot was precluded because the affected area, the forefoot, had been removed in the December 2009 amputation). 

The Veteran underwent a 2011 VA examination report which noted the December 2009 transmetatarsal amputation and the fact that, as a result, the Veteran had on the right "no forefoot at present." The April 2011 report indicates there are no current treatments and included an introductory comment stating, in part: "Patient had transmetatarsal amputation..." The April 2011 examiner documented the Veteran's reported right foot symptoms of pain, stiffness, weakness, and lack of endurance. With respect to location, the examiner found the following: pain (forefoot amputation scar); stiffness (all of foot); weakness (all of foot); lack of endurance (all of foot); other symptoms (numbness at forefoot at site of surgical scar for amputation of forefoot). The examiner went on to indicate that the Veteran was unable to stand for more than a few minutes and was unable to walk more than a few yards. Like the April 2009 examiner, the April 2011 examiner failed to find objective evidence of painful motion, swelling, instability, or weakness. The April 2011 report documents objective evidence of tenderness "at transmetatarsal surgical scar." The April 2011 VA examiner also found evidence of abnormal weight bearing, described as: "walks using a one point cane and right l/e limp has right transmetatarsal amputation."

In the "Diagnosis" portion of the report, the April 2011 VA examiner indicated: "Right foot fracture compound, comminuted, sesamoid bone right foot secondary to GSW (no forefoot at present due to transmetatarsal amputation 2009)." The Board notes that the March 2011 request for an examination identified the disability as: "fracture, compound, comminuted, sesamoid bone, right foot". The April 2011 examiner listed the "problem associated with diagnosis" as "right foot fracture." The examiner responded affirmatively to the question: "Are there effects of the problem on the following daily activities?" The effects range from "prevents" (exercise, sports, and driving) to "severe" (chores and shopping) to "moderate" and "none". The examiner concludes this section of his report with the following comment: "Patient had right transmetatarsal amputation secondary to gangrene and right ileofemoral endarterectomy in December 2009." The Board notes that the April 2011 examiner did not request or include the results of any x-ray or other imaging of the right foot with respect to the residuals of the fracture (vascular studies are included in a separate part of the report).

Analysis

In its June 2014 Memorandum Decision, the Court determined that the Board provided inadequate reasons and bases for concluding that the Veteran's foot disability was moderate rather than severe under DC 5284. The Court placed considerable reliance on the April 2009 VA examination report that reflected effects on daily activities ranging from "moderate" to "severe," with exercise and sports precluded.

The Court also directed the Board to consider the applicability of 38 C.F.R. § 4.56 relating to the evaluation of muscle disabilities, particularly in the context of possible indications of muscle damage such as evidence of weakness, pain, and fatigue.

The April 2009 and April 2011 VA examination reports document limitations on his activities of daily living that include prevention of sports and exercise, as well as severe effects on shopping and recreation. Giving the Veteran the benefit of the doubt, as the Board must, these functional effects are best characterized as "severe" under DC 5284 and, therefore, a 30 percent disability rating will be assigned for the entire appeal period. The Board grants the award back to the date of claim due to ambiguity in the record and the recognition that muscle atrophy takes time to develop. Consequently, the Board finds as a matter of fact that the functional impacts, whether caused by or causing the muscle atrophy noted in April 2009, were at least as likely as not present as of March 19, 2008, the start of the present appeal period. See Gilbert, 1 Vet. App. at 53-56.

The Board has considered whether a higher, 40 percent rating would be appropriate under DC 5284 during this time period. However, there is no evidence that the Veteran suffered the "actual loss of use of the foot" and the Veteran's symptoms do not more closely approximate the criteria for that rating. He was, after all, able to stand, walk, and drive, albeit with significant limitations, during this time period.

The Veteran does not have flat foot (DC 5276) or claw foot (DC 5278) or malunion or nonunion of the tarsal or metatarsal bones (DC 5283) the only diagnostic codes for musculoskeletal disabilities of the feet that provide for higher than 30 percent ratings. Therefore, rating under any of these diagnostic codes rather than under DC 5284 would not result in a higher rating. In addition, the Veteran did not suffer an amputation of all or a portion of his foot due to his service-connected conditions, and the functional impacts associated with his service-connected condition do not more closely approximate those of an amputation rather than a severe foot disability, so rating as a lower extremity amputation (DCs 5160-5173) is not warranted.

The Board has also considered the applicability of 38 C.F.R. § 4.56, including whether a separate rating for injury to a muscle of the foot is warranted. The highest rating available under 38 C.F.R. § 4.73, DCs 5310-5312, for injuries to the muscles controlling the foot and leg is a 30 percent rating for a "severe" muscle disability. The medical evidence, including particularly the April 2009 VA examiner, attributes the right foot atrophy of the interosseous muscles to the service-connected residuals of a compound, comminuted fracture of a sesamoid bone in the right foot. The examiner did not differentiate the functional impacts caused by the muscle atrophy and the other residuals of the service-connected right foot disability. Therefore, the functional impacts that the Board has determined warrant a 30 percent rating for a "severe" foot disability include those impacts associated with the muscle atrophy. The Board finds that a separate rating for those same functional impacts under a diagnostic code applicable to muscle disabilities would constitute inappropriate pyramiding. 38 C.F.R. § 4.14; see also Brady v. Brown, 4 Vet. App. 203, 206 (1993) (interpreting 38 U.S.C.A. § 1155 and concluding that compensating a claimant twice for the same symptomatology "would overcompensate the claimant for the actual impairment of his earning capacity"). Therefore, the Board need not resolve whether "muscle atrophy" that develops decades after an injury constitutes "muscle damage" under 38 C.F.R. § 4.56(a) or whether the Veteran's symptoms are indicative of "severe" muscle damage under 38 C.F.R. § 4.56(c).

For the foregoing reasons, entitlement to an evaluation of 30 percent, but no more, under DC 5284 for residuals of a compound, comminuted fracture of a sesamoid bone in the right foot is granted.

The Impact of the Partial Foot Amputation

The Veteran underwent a transmetatarsal amputation of his right foot due to nonservice-connected complications on December 18, 2009. The surgery involved removal of the forefoot of Veteran's right foot and, consequently, "the previously atrophied interosseous muscle." As succinctly put by the 2011 VA examiner, the Veteran has, on the right, "no forefoot at present."

The CAVC specifically directed the Board to consider, in the first instance, how the partial foot amputation might affect the Veteran's disability rating subsequent to his amputation. See June 2014 CAVC Memorandum Decision at p. 2.

The Board finds that the portion of the Veteran's right foot affected by the service-connected condition has been removed. The affected area included residuals of a fractured sesamoid bone near the head of the first metatarsal and atrophied interosseous muscles. The medical evidence, including the contemporaneous operative and pathology reports as well as the April 2011 VA examination, establish that those portions of the Veteran's foot were removed. The removal was secondary to nonservice-connected conditions which fact, as the Court noted, has not been disputed by the Veteran. The Board thoroughly discussed the evidence supporting that determination in its August 2012 decision and, after again reviewing the evidence including the April 2011 VA examination report, relies on that same evidence here.

Because the area of the Veteran's right foot affected by the service-connected disability has been removed, no further examination of that portion of the foot is possible. However, the Board finds that it would be inequitable and not appropriate given the benefit of the doubt standard to assign a lower rating for periods subsequent to the amputation. "Because the ratings are averages, it follows that an assigned rating may not completely account for each individual veteran's circumstance, but nevertheless would still be adequate to address the average impairment in earning capacity caused by disability". Thun v. Peake, 22 Vet. App. 111, 114 (2008), aff'd Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). Here, the Veteran's average impairment in earning capacity has not improved and, so, the Board will not assign a lower rating than the 30 percent rating warranted by pre-amputation evidence.

The Board also finds that the amputation due to nonservice-connected complications does not, under law or equity, warrant the assignment of a higher rating subsequent to the amputation. The examination April 2011 VA examination recites functional impacts, including severe impacts on chores and shopping and prevention of sports and exercise, that support the 30 percent rating but, the Board expressly finds, not any higher rating. 

The Court found that the Board's August 2012 decision failed to adequately address these findings in the April 2011 VA examination report. However, given the reassessment of the foot condition as "severe" under the rating criteria, the Board believes that the concerns raised by the Veteran and the Court have been adequately addressed. 

Extraschedular Rating

The Board has considered whether an extraschedular evaluation is warranted for the Veteran's right foot disability for any portion of the appeal period. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2014). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111, 118-19 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

Turning to the first step of the extraschedular analysis, the Board finds that the symptomatology and impairments caused by the Veteran's service connected disability are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. 

As was explained in the merits decision above, the criteria for higher schedular ratings were considered, but the criteria associated with the assigned ratings are adequate. As discussed above, the symptoms and functional impacts of the Veteran's right foot disability, which have already been discussed in detail, are fairly described as "severe" under DC 5284. There are no functional impacts during the appeal period that suggest the criteria under DC 5284 are inadequate. While the Board will not assign a lower rating for the period after December 18, 2009, the Board finds that an extraschedular rating based on the effects of a nonservice-connected partial foot amputation is not appropriate. This determination is based, in significant part, on the fact that the rating criteria applied above reasonably encompass the symptoms and functional limitations identified in the post-amputation, April 2011 VA examination which necessarily encompass not only the service-connected disability but also the effects of the nonservice-connected partial amputation. In view of the circumstances, the Board finds that the rating schedule is adequate, even in regard to the collective and combined effect of all of the Veteran's service connected disabilities, and that referral for extraschedular consideration is not warranted under the circumstances of this case. Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. Aug. 6, 2014). 

On the record now before the Board, referral for an extraschedular rating for the right foot disability at issue is not warranted.



ORDER

Entitlement to an evaluation of 30 percent, but no more, for residuals of a compound, comminuted fracture of a sesamoid bone in the right foot from March 19, 2008, throughout the remainder of the appeal period, is granted, subject to the laws and regulations governing the award of monetary benefits.


____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs