http://www.va.gov/vetapp16/Files4/1634320.txt

Citation Nr: 1634320 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 10-48 175 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas

THE ISSUES

1. Entitlement to service connection for a cervical spine disability, to include as due to cold weather residuals and/or service-connected disabilities. 

2. Entitlement to service connection for a disability manifested by poor circulation, to include as due to cold weather residuals and/or service-connected disabilities. 

REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

Appellant
ATTORNEY FOR THE BOARD

Jarrette A. Marley, Counsel

INTRODUCTION

The Veteran served on active duty in the United States Air Force from May 1973 to September 1994. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a November 2009 rating decision by the North Little Rock, Arkansas Department of Veterans Affairs (VA) Regional Office (RO). The Veteran testified before the undersigned Veterans Law Judge in a June 2013 video conference hearing; a transcript of the hearing is associated with the claims file. These matters were previously before the Board in July 2014 when they were remanded for additional development. 

The Board notes that the July 2014 decision also remanded the matters of entitlement to service connection for right and left hand disabilities, and right and left wrist disabilities. In a January 2015 rating decision, the RO granted service connection for cold injury residuals of the right and left upper extremities (to include both hands and the wrists), and the right and left lower extremities, rated 10 percent each. In March 2015, the Veteran expressed disagreement with the initial ratings assigned, indicating he was seeking a 20 percent rating for each extremity. In a May 2015 rating decision, the RO granted initial 20 percent ratings for cold injury residuals of the right and left upper extremities, and the right and left lower extremities. Such represents a full grant of the benefits sought on appeal, and these matters will not be addressed herein. 

The issue of entitlement to service connection for a cervical spine disability and TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

The Veteran does not have a disability manifested by poor circulation or of a poor circulatory system. 

CONCLUSION OF LAW

Service connection for a disability manifested by poor circulation or for a poor circulatory system is not warranted. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2015); 38 C.F.R. §§ 3.102, 3.303 (2015). 

REASONS AND BASES FOR FINDING AND CONCLUSIONS

The Veteran asserts that he has a disability manifested by poor circulation or a poor circulatory system, to include as due to residuals of cold weather during service, and/or service-connected disabilities. See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

Service connection is granted for disability resulting from disease or injury incurred in or aggravated by active duty. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. §§ 3.303, 3.304. Service connection may be granted for any disease initially diagnosed after service, when all the evidence, including that pertinent to service, establishes the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999). 

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrence of symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007).

The Veteran's service treatment records are silent for any findings, treatment, or diagnoses relating to a disability manifested by poor circulation, or of a poor circulatory system, including the May 1994 retirement medical examination report. The Veteran's service personnel records show that he was stationed, in part, in Alaska and Japan. His DD Form 214 shows that he served in support of Operation Desert Shield/Storm from August 1990 to September 1994, and thus it is conceded he is a Persian Gulf War era Veteran. However, there is no evidence to show, and it is not contended, that the Veteran served in the Southwest Asia theater of operations during the Persian Gulf War, and the presumptive provisions of 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317 are not applicable in this case. 

Based on the evidence of record, the Board finds that the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for a disability manifested by poor circulation or for a poor circulatory system as he does not have a current diagnosis of such disability.

The issue in this case is whether the Veteran has a current disability manifested by poor circulation or of a poor circulatory system, as a residual of his active service, conceded cold weather exposure during service, or is secondary to a service-connected disability. The only competent evidence addressing this matter is a February 2009 VA cold injury examination report, and a December 2014 VA cold injury residual examination report. On February 2009 VA cold injury examination, it was noted that the Veteran's circulation appeared to be normal. The peripheral pulses were found to be adequate bilaterally, and he did not have any circulatory problems. The diagnosis was no evidence of a circulatory disorder. Similarly, on December 2014 VA cold injury residual examination, physical examination found excellent pulses in the hands and feet, and the conclusion was there was no evidence of poor circulation. The Board also notes that the Veteran is currently service-connected for hypertension, and cold injury residuals of the right and left upper and lower extremities. While the Veteran contends that his arms and legs are affected by poor circulation, the record shows that he has already established service connection for disabilities that encompass the symptomatology at issue. The evaluation of the same manifestation under various different diagnoses is to be avoided. See 38 C.F.R. § 4.14; see also Brady v. Brown, 4 Vet. App. 203, 206 (1993) (holding that the rating schedule may not be employed as a vehicle for compensating a claimant twice or more for the same symptomatology because such a result would overcompensate the claimant for the actual impairment of his earning capacity and would constitute pyramiding). 

Given the lack of competent evidence showing the Veteran has a current disability manifested by poor circulation or of a poor circulatory system, regardless of the theory of entitlement alleged, the claim for such must be denied. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

ORDER

Service connection for a disability manifested by poor circulation is denied. 

REMAND

Regarding the claim for service connection for a cervical spine disability, the matter was remanded, in part, in July 2014 to provide the Veteran a VA examination to determine the onset and etiology of his disability. On December 2014 VA neck examination, the Veteran was diagnosed with cervical spondylosis with stenosis. It was indicated that there was no treatment for cervical spine disease in service. It was opined that the Veteran's cervical spondylosis would not be caused by cold weather injury in the service, and that it was unrelated to his service-connected hypertension or sleep apnea and treatment of those conditions as they would not cause or aggravate his cervical spondylosis. The examiner further stated that there could be some temporary neck muscle spasm depending on his sleep position with the continuous positive airway pressure (CPAP) mask, but no permanent aggravation. The Board finds, in agreement with the Veteran's representative in May 2016 correspondence, that the opinions provided in the December 2014 VA neck examination are entitled to no probative value due to their conclusory nature. Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A] medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions."). Accordingly, the Board finds that the Veteran should be provided a new VA examination by a new examiner that adequately addresses all alleged theories of entitlement. 

Finally, the Veteran's claims file should be updated to include relevant VA treatment records dated since December 2014. 38 U.S.C.A. § 5103A(c) ; see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim); Sullivan v. McDonald, 815 F.3d 786, 792 (Fed. Cir. 2016) (holding that 38 C.F.R. § 3.159(c)(3) expanded VA's duty to assist to include obtaining VA medical records without consideration of their relevance).

Accordingly, the case is REMANDED for the following action:

1. The RO should associate with the claims file updated VA treatment records since December 2014, as well as any identified outstanding private treatment records that have not been associated with the claims file.
2. Provide the Veteran an appropriate VA examination, by a different examiner than the December 2014 VA examiner, to determine the nature, extent, onset, and etiology of his cervical spine disability. The claims file must be made available to and be reviewed by the examiner in conjunction with the examination. All indicated studies should be performed and all findings should be reported in detail. After diagnosing any cervical spine disability found to be present, the examiner must opine to the following: 

a) Whether it is at least as likely as not that any cervical spine disability had its onset in service/ 
b) Whether it is at least as likely as not that any cervical spine disability is a residual of cold weather injury during service? 
c) Whether it is at least as likely as not that any cervical spine disability was caused by the Veteran's hypertension and/or sleep apnea (to include the treatment for the hypertension and sleep apnea, including any alteration in the manner he has to sleep because of his CPAP mask)? 
d) Whether it is at least as likely as not that that any cervical spine disability was aggravated by the Veteran's hypertension and/or sleep apnea (to include the treatment for the hypertension and sleep apnea, including any alteration in the manner he has to sleep because of his CPAP mask)? 

In offering these opinions, the examiner must acknowledge and discuss the Veteran's competent report as to the onset of his symptoms. All opinions should be supported a thorough rationale, to include reference to relevant evidence of record as appropriate. 

The examiner is also asked to specifically address a September 2013 opinion by the Arkansas Specialty Orthopaedics in which it was opined that the Veteran's advanced degenerative changes in his cervical spine would be consistent with a history of working with airplanes for twenty-plus years, and provide an opinion with rationale supporting or refuting such opinion. 
3. The RO should the appeal, which should not be returned to the Board prior to completion of the above development. If the benefit sought on appeal remains denied, the Veteran and his representative should be provided with a supplemental statement of the case. An appropriate period of time should be allowed for response. 

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2015).

______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs