Citation Nr: 1826260 
Decision Date: 04/30/18 Archive Date: 05/07/18

DOCKET NO. 11-20 636 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to an initial evaluation greater than 20 percent for service-connected degenerative disc disease (DDD) of the lumbosacral spine.

2. Entitlement to an evaluation greater than 20 percent for service-connected peripheral neuropathy of the right lower extremity from August 5, 2015.

3. Entitlement to an evaluation greater than 20 percent for service-connected peripheral neuropathy of the left lower extremity from August 5, 2015.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

C. Garcia, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Army from August 1966 to August 1968 with service in Vietnam.

The peripheral neuropathy issues come before the Board of Veterans' Appeals (Board) on appeal from a September 2015 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia.

The lumbosacral spine issue comes before the Board on appeal from a July 2010 rating decision of the VA RO in Roanoke, Virginia. The RO effectuated a March 2010 Board decision's grant of entitlement to service connection for the Veteran's lumbosacral spine disorder and assigned an initial rating of 10 percent effective April 11, 2002. In a September 2015 rating decision, the RO assigned a 20 percent rating effective August 5, 2015 (date of VA examination).

In September 2016, these matters were remanded for further development. In its decision, the Board granted an initial 20 percent disability rating for the low back from April 11, 2002 (date of claim), to August 5, 2015. The Board remanded the issue of an initial evaluation greater than 20 percent from August 5, 2015. The case is once again before the Board. With respect to the peripheral neuropathy issue of the left and right lower extremities, the Board denied an evaluation greater than 10 percent prior to August 5, 2015. It remanded the issue of an evaluation greater than 20 percent from August 5, 2015. The case is once again before the Board.


FINDINGS OF FACT

1. Throughout the appeal period, the preponderance of the evidence is against a finding that the Veteran's service-connected DDD lumbosacral spine disorder resulted in forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine; more than moderate limitation of motion of the lumbar spine is not shown or more nearly approximated; and intervertebral disc syndrome with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months is not shown or more nearly approximated. However, examination on August 5, 2015, revealed 45 degrees of flexion with additional functional loss due to pain and weakness.

2. Throughout the period from August 5, 2015, the preponderance of the evidence is against a finding that the Veteran's service-connected peripheral neuropathy of the left and right lower extremities resulted in moderately severe incomplete paralysis.


CONCLUSIONS OF LAW

1. The criteria for an evaluation of 40 percent, but no greater, for service-connected DDD of the lumbosacral spine from August 5, 2015, have been met; the criteria for a rating in excess of 20 percent prior to that date have not been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5242 (2017), Diagnostic Code 5292 (2003).

2. The criteria for an evaluation greater than 20 percent for service-connected peripheral neuropathy of the right lower extremity from August 5, 2015, have not been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.124a, Diagnostic Code 8520 (2017).

3. The criteria for an evaluation greater than 20 percent for service-connected peripheral neuropathy of the left lower extremity from August 5, 2015, have not been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.124a, Diagnostic Code 8520 (2017).




REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a).

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the Veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to the duty to assist argument).

The Board finds that all relevant facts have been properly and sufficiently developed in this appeal and that no further development is required to comply with the duty to assist the Veteran in developing the facts pertinent to his claim. Appellate review may proceed without prejudice to the Veteran.

II. Increased Ratings

Disability ratings are based upon VA's Schedule for Rating Disabilities as set forth in 38 C.F.R. Part 4 (2017). The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity in civil occupations. 38 U.S.C. § 1155 (2012). The disability must be viewed in relation to its history. 38 C.F.R. § 4.1 (2017). Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned to the disability picture that more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7 (2017). Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3 (2017).

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, consideration also must be given as to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

The evaluation of the same "disability" or the same "manifestations" under various diagnoses is prohibited. 38 C.F.R. § 4.14 (2017). A claimant may not be compensated twice for the same symptomatology as "such a result would overcompensate the claimant for the actual impairment of his earning capacity." Brady v. Brown, 4 Vet. App. 203, 206 (1993). This would result in pyramiding, contrary to the provisions of 38 C.F.R. § 4.14. However, when a veteran has separate and distinct manifestations attributable to the same injury, he should be compensated under different diagnostic codes. Esteban v. Brown, 6 Vet. App. 259 (1994); Fanning v. Brown, 4 Vet. App. 225 (1993).

A. Degenerative Disc Disease of the Lumbosacral Spine

The Veteran and his representative assert that his low back disorder warrants an increased rating, which is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5242.

When evaluating joint disabilities rated on the basis of limitation of motion, VA must consider granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not specifically contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59 (2017); DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Johnston v. Brown, 10 Vet. App. 80, 84-85 (1997); 38 C.F.R. § 4.59. The Court has instructed that in applying these regulations VA should obtain examinations in which the examiner determined whether the disability was manifested by the above considerations such as weakened movement, excess fatigability, incoordination, or pain. Such inquiry is not to be limited to muscles or nerves. The Court has clarified that although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011); cf. Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995); Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1991). Instead, the Mitchell Court explained that pursuant to 38 C.F.R. §§ 4.40 and 4.45, the possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance, and less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (with swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing. See 38 C.F.R. §§ 4.40, 4.45. Functional loss caused by pain must be rated at the same level as if the functional loss were caused by any of the other factors cited above. Thus, in evaluating the severity of a joint disability, VA must determine the overall functional impairment due to these factors.

The rating schedule for evaluating spine disabilities changed during the pendency of this claim. Either the old or new rating criteria may apply, whichever are most favorable to the Veteran, although the new rating criteria are only applicable since their effective date. VAOPGCPREC 3-2000; 65 Fed. Reg. 33422 (2000). Specifically, the criteria pertaining to the evaluation of intervertebral disc syndrome were revised effective September 23, 2002 (67 Fed. Reg. 54345 -54349 (2002)), followed by a revision of the entire section of the rating schedule pertaining to disabilities of the spine effective September 26, 2003. 68 Fed. Reg. 51,454-458 (Aug. 27, 2003); 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243 (2004). The 2003 revisions did not result in any substantive changes from the 2002 revisions for the evaluation of intervertebral disc syndrome.

Under the old criteria, in effect prior to September 26, 2003, limitation of motion of the lumbar spine is rated 10 percent when mild, 20 percent when moderate and 40 percent when severe. 38 C.F.R. § 4.71a, Diagnostic Code 5292 (2002). For lumbosacral strain with muscle spasm on extreme forward bending, loss of lateral spine motion, unilateral, in standing position, a 20 percent rating is warranted. Severe lumbosacral strain manifested by listing of the whole spine to the opposite side, a positive Goldthwait's sign, marked limitation of forward bending in a standing position, loss of lateral motion with osteoarthritic changes, or narrowing or irregularity of the joint space, or some of the above with abnormal mobility on forced motion, warrants a 40 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5295 (2002). Favorable ankylosis of the lumbar spine warrants a 40 percent rating, while unfavorable ankylosis warrants a 50 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5289 (2002).

Effective September 26, 2003, disabilities of the spine are rated under the General Rating Formula for Diseases and Injuries of the Spine (for Diagnostic Codes 5235 to 5243, unless 5243 is evaluated under the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes). Ratings under the General Rating Formula for Diseases and Injuries of the Spine are made with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease.

The General Rating Formula for Diseases and Injuries of the Spine provides a 10 percent disability rating for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, forward flexion of the cervical spine greater than 30 degrees but not greater than 40 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent disability rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, the combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 30 percent disability rating is assigned for forward flexion of the cervical spine 15 degrees or less; or, favorable ankylosis of the entire cervical spine. A 40 percent disability rating is assigned for unfavorable ankylosis of the entire cervical spine; or, forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent disability rating is assigned for unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent disability rating is assigned for unfavorable ankylosis of entire spine. 38 C.F.R. § 4.71a.

Note (2) provides that, for VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The normal combined range of motion of the thoracolumbar spine is 240 degrees. See also Plate V, 38 C.F.R. § 4.71a.

Evaluations for intervertebral disc syndrome are to be performed either under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined under § 4.25. 38 C.F.R. § 4.71a, Note 6. Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 10 percent disability rating is assigned for incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months. 38 C.F.R. § 4.71a. A 20 percent disability rating is assigned for incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months. Id. A 40 percent disability rating is assigned for incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. Id. A 60 percent disability rating is assigned for incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. Id.

Under the schedular criteria, in addition to considering the orthopedic manifestations of a back disability, consideration must be given to any objective neurologic abnormalities associated with the back disability, which are to be evaluated separately under an appropriate diagnostic code. See Note (1) of the 'General Rating Formula for Disease and Injuries of the Spine.' Such neurologic abnormalities include, but are not limited to, bowel or bladder impairment. Id. The note directs VA to consider whether combining ratings for orthopedic and neurological manifestations of the cervical spine disability would result in a higher rating.

On April 11, 2002, the Veteran filed a claim of entitlement to service connection for low back disorder. In September 2016, the Board granted a disability rating of 20 percent from April 11, 2002 to August 5, 2015. The Board remanded the issue of an initial evaluation greater than 20 percent for the low back. Because the claim is an initial claim, the Board will consider evidence of symptomatology from the date the claim was filed, the period beginning April 11, 2002. Hart v. Mansfield, 21 Vet. App. 505 (2007); cf 38 C.F.R. § 3.156(b) (2017).

The Board takes into consideration the Veteran's statements and the statements of his spouse with respect to his low back disorder. At his hearing, the Veteran testified to feeling pain throughout his lower back. See April 2004 hearing transcript. His spouse states that he walks with his hands on his hips and back because of the pain. See November 2005 spouse statements. She states that he feels pain about every night. Id. He has trouble sleeping because of his back pain. Id.

The Board acknowledges that while the Veteran is considered competent to report symptoms that he can personally observe because this requires only personal knowledge as it comes to him through his senses, he is not competent to identify a specific level of his low back disorder according to the appropriate diagnostic codes. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994) (lay testimony is competent as to symptoms of an injury or illness, which are within the realm of personal knowledge); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of the testimony, it does not affect competency to testify"). Thus, the Board finds that the Veteran is considered competent to report on symptoms such as pain and weakness but he is not able to identify the specific level of his low back disorder.

Turning to the medical evidence of record, private treatment records document chronic low back pain. See December 2003 private treatment records.

His October 2008 VA spine examination documents forward flexion to 80 degrees, with pain beginning at 75 degrees; right lateral flexion to 30 degrees with pain beginning at 28 degrees; left lateral flexion to 25 degrees with pain beginning at 22 degrees; right lateral rotation to 25 degrees with pain beginning at 22 degrees; and left lateral rotation to 25 degrees with pain beginning at 20 degrees. This then corresponds to a combined range of motion of 185 degrees. He was diagnosed with DDD of the lumbar spine. The severity of pain and flare-ups was noted as moderate and the Veteran's impression as to the extent of additional limitation of motion or other functional impairments during flare-ups was also noted as being moderate. Muscle spasm was noted but not severe enough to be responsible for abnormal gait or abnormal spinal contour.

December 2009 private treatment letters note an abnormal gait, chronic low back pain, and decreased range of motion with muscle spasms. May 2011 to January 2017 VA treatment records note chronic low back pain.

A June 2012 VA examination diagnosed the Veteran with DDD of the lumbar spine. Flare-ups impacting the function of the lumbar spine were noted lasting approximately two weeks. Regarding range of motion, forward flexion was limited to 70 degrees, extension to 30 degrees, right and left lateral flexion to 30 degrees, and right and left lateral rotation to 30 degrees. This then corresponds to a combined range of motion of 220 degrees. The Veteran was able to perform repetitive-use testing with three repetitions with no additional limitation in range of motion following repetitive-use testing. Localized tenderness to palpation and guarding or muscle spasm of the lumbar spine severe enough to result in abnormal gait were noted. Intervertebral disc syndrome (IVDS) was noted; however, no incapacitating episodes over the past 12 months due to IVDS was noted. No scar was noted.

An October 2013 VA examination notes flare-ups impacting the function of the lumbar spine. Regarding range of motion, forward flexion was limited to 60 degrees, extension to 20 degrees, right lateral flexion to 15 degrees, left lateral flexion to 20 degrees, right lateral rotation to 20 degrees, and left lateral rotation to 20 degrees. This then corresponds to a combined range of motion of 155 degrees. The Veteran was able to perform repetitive-use testing with three repetitions with no additional limitation in range of motion following repetitive-use testing. Localized tenderness to palpation was noted. IVDS was noted; however, no incapacitating episodes over the past 12 months due to IVDS was noted. No scar was noted.

On August 5, 2015, a VA examination was conducted. The examiner noted no reports of any flare-ups. Regarding range of motion, forward flexion was limited to 45 degrees, extension to 0 degrees, right lateral flexion to 10 degrees, left lateral flexion to 10 degrees, right lateral rotation to 10 degrees, and left lateral rotation to 10 degrees. This then corresponds to a combined range of motion of 85 degrees. There was evidence of pain with weight bearing. There was objective evidence of localized tenderness to palpation. The Veteran was able to perform repetitive-use testing with at least three repetitions with no additional limitation in range of motion following repetitive-use testing. There was muscle spasm and localized tenderness resulting in abnormal gait or abnormal spinal contour. IVDS was noted with episodes or acute signs and symptoms that required bed rest prescribed by a physician and treatment by a physician in the past 12 months. Total duration of at least two weeks but less than four weeks during the past 12 months was noted.

Following the Board's September 2016 remand, the Veteran was scheduled for a VA examination regarding his low back condition. Since the Veteran failed to appear at the examination and did not provide cause for doing so, the service-connection claim shall be decided based on the evidence of record. See 38 C.F.R. § 3.655(b) (2017).

Under VA regulations, it is incumbent upon the Veteran to submit to a VA examination regarding VA compensation or pension benefits. See Dusek v. Derwinski, 2 Vet. App. 519 (1992). When necessary or requested, the Veteran must cooperate with the VA in obtaining evidence. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991) (holding that the duty to assist is not a one-way street). When entitlement to a benefit cannot be established or confirmed without a current VA examination and a claimant, without "good cause," fails to report for such examination, action shall be taken. 38 C.F.R. § 3.655(a) (2017). Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant and death of an immediate family member. When a claimant fails to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of record. 38 C.F.R. § 3.655(b) (2017). When the examination was scheduled in conjunction with any other original claim, a reopened claim for a benefit which was previously disallowed, or a claim for increase, the claim shall be denied. Id.

In this case, the Board has reviewed the Veteran's medical history, his lay statements, and the corresponding VA examinations. The Board finds that the VA examinations during this time period are the most probative pieces of evidence in regards to the severity of the Veteran's low back disorder. In reaching this conclusion, the Board has not overlooked the lay statements regarding the severity of the Veteran's condition but finds that the VA examinations during this time period are the most probative pieces of evidence because these evaluations specifically addressed the severity of the Veteran's low back condition. Accordingly, the Board has placed significant weight on those evaluations. Davidson, supra.

The Board notes that the Veteran was assigned a disability rating of 20 percent effective April 11, 2002, based on moderate limitation of motion under former Diagnostic Code 5292. See September 2016 Board decision. The Board finds that the Veteran is not entitled to a rating in excess of 20 percent because he did not exhibit the symptoms required for a 40 percent rating under the General Rating Formula for Disease and Injuries of the Spine in effect before and after September 23, 2003. More specifically, there was no indication that the Veteran displayed any symptoms associated with a 40 percent disability rating, such as forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. There was no indication that the Veteran displayed any symptoms associated with any other higher rating, such as unfavorable ankylosis of the entire thoracolumbar spine. There was also no indication that the Veteran displayed any symptoms associated with severe limitation under the old criteria.

However, the Veteran is entitled to the next highest rating of 40 percent under DeLuca, effective from August 5, 2015. Although there was evidence of painful limitation of motion prior to that date and October 2008, June 2012, and October 2013 VA examiners noted pain throughout range of motion, less movement than normal, and weakened movement, flexion during the period prior to August 5, 2015, was never limited by less than 60 degrees. Thus, there was no uncompensated limitation of motion that could provide a basis for a higher rating under DeLuca. However, the August 5, 2015, VA examiner noted pain with weight bearing and localized tenderness or pain on palpation of the joint or associated soft tissue of the lumbar spine, and because flexion was limited to 45 degrees, there was actually 15 additional limitation that when combined with pain on functional use, does provide a basis for the next higher rating under Deluca for the period from August 5, 2015. Under such circumstances, an increased rating to 40 percent, but no greater, is warranted under DeLuca, for the period from August 5, 2015.

Lastly, the Board finds that the issue of an extraschedular rating has not been raised by the record, and will not consider referral. Doucette v. Shulkin, 28 Vet. App. 366, 371 (2017).

B. Peripheral Neuropathy of the Bilateral Lower Extremities

The Veteran and his representative assert that his peripheral neuropathy of the left and right lower extremities warrants an increased rating, which is rated under 38 C.F.R. § 4.71a, Diagnostic Code 8520.

Diagnostic Code 8520 provides ratings for paralysis of the sciatic nerve. Diagnostic Code 8520 provides that mild incomplete paralysis is rated 10 percent disabling; moderate incomplete paralysis is rated 20 percent disabling; moderately severe incomplete paralysis is rated 40 percent disabling; and severe incomplete paralysis, with marked muscular atrophy, is rated 60 percent disabling. Complete paralysis of the sciatic nerve, the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost, is rated 80 percent disabling.

Diagnostic Code 8620 provides a rating for neuritis of the sciatic nerve. Diagnostic Code 8720 provides a rating for neuralgia of the sciatic nerve.

The term "incomplete paralysis" with this and other peripheral nerve injuries indicates a degree of lost or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. The ratings for the peripheral nerves are for unilateral involvement; when there is bilateral involvement, the VA adjudicator is to combine the ratings for the peripheral nerves, with application of the bilateral factor. 38 C.F.R. § 4.124a.

On October 6, 2003, the Veteran filed a claim of entitlement to an increased rating for diabetes mellitus to include peripheral neuropathy. In September 2016, the Board denied a disability rating greater than 10 percent prior to August 5, 2015. The Board remanded the issue of an evaluation greater than 20 percent for peripheral neuropathy of the bilateral lower extremities from August 5, 2015. Because the Board already adjudicated the claim prior to August 5, 2015, the Board will consider evidence of symptomatology from the remaining period not yet adjudicated, the period beginning August 5, 2015. Hart v. Mansfield, 21 Vet. App. 505 (2007); cf 38 C.F.R. § 3.156(b) (2017).

The Board takes into consideration the Veteran's statements. The Board acknowledges that while the Veteran is considered competent to report symptoms that he can personally observe because this requires only personal knowledge as it comes to him through his senses, he is not competent to identify a specific level of his peripheral neuropathy of the lower extremities according to the appropriate diagnostic codes. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994) (lay testimony is competent as to symptoms of an injury or illness, which are within the realm of personal knowledge); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of the testimony, it does not affect competency to testify"). Thus, the Board finds that the Veteran is considered competent to report on symptoms such as pain and weakness but he is not able to identify the specific level of his peripheral neuropathy of the lower extremities.

Turning to the medical evidence of record, his August 2015 VA examination notes normal in muscle strength testing and no report of muscle atrophy. Deep tendon reflexes were hypoactive in the left and right knees and in the left and right ankles. A sensory examination was decreased light touch in the right and left lower extremities. There was moderate radiculopathy in the left and right lower extremities.

September 2015 to January 2017 VA treatment records document mild to moderate symptom severity regarding the Veteran's left and right lower extremities.

Following the Board's September 2016 remand, the Veteran was scheduled for a VA examination regarding his low back condition. Because such evaluation of the Veteran's lumbosacral spine was likely to include findings regarding the current nature and severity of his peripheral neuropathy, the Board deferred adjudication of whether ratings in excess of 20 percent from August 5, 2015, are warranted for service-connected peripheral neuropathy. However, since the Veteran failed to appear at the examination and did not provide cause for doing so, the service-connection claim shall be decided based on the evidence of record. See 38 C.F.R. § 3.655(b) (2017).

In this case, the Board has reviewed the Veteran's medical history, his lay statements, and the corresponding VA examinations. The Board finds that the VA examinations during this time period are the most probative pieces of evidence in regards to the severity of the Veteran's peripheral neuropathy disorder. In reaching this conclusion, the Board has not overlooked the lay statements regarding the severity of the Veteran's condition but finds that the VA examinations during this time period are the most probative pieces of evidence because these evaluations specifically addressed the severity of the Veteran's peripheral neuropathy condition. Accordingly, the Board has placed significant weight on those evaluations. Davidson, supra.

The Board notes that the Veteran was assigned a 10 percent rating prior to August 5, 2015, based on mild incomplete paralysis under Diagnostic Code 8520. See September 2016 Board decision. The Veteran was also assigned a 20 percent rating effective August 5, 2015. See September 2015 rating decision. The Board finds that the Veteran is not entitled to a rating in excess of 20 percent because he did not exhibit the symptoms required for a 40 percent rating. More specifically, there was no indication that the Veteran displayed any symptoms associated with a 40 percent disability rating, such as moderately severe incomplete paralysis of the left and right lower extremities. There was mild to moderate radiculopathy in the Veteran's right and left lower extremities as shown by his VA examinations and VA treatment records.

Lastly, the Board finds that the issue of an extraschedular rating has not been raised by the record, and will not consider referral. Doucette v. Shulkin, 28 Vet. App. 366, 371 (2017).

While the Board is sympathetic to the Veteran's contentions, in the final analysis, the Board finds that the preponderance of the evidence is against his claim. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). As such, the provisions of 38 U.S.C. § 5107(b) regarding reasonable doubt are not applicable.

















ORDER

Entitlement to an evaluation of 40 percent, but no greater, for service-connected DDD of the lumbosacral spine from August 5, 2015, is granted, subject to the law and regulations governing the payment of monetary benefits; a rating in excess of 20 percent prior to that date is denied.

Entitlement to an evaluation greater than 20 percent for service-connected peripheral neuropathy of the right lower extremity from August 5, 2015, is denied.

Entitlement to an evaluation greater than 20 percent for service-connected peripheral neuropathy of the left lower extremity from August 5, 2015, is denied.




____________________________________________
Michael J. Skaltsounis
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs