Citation Nr: 21050010
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 15-34 318
DATE: August 13, 2021

ORDER

Entitlement to service connection for an acquired psychiatric disability, to include posttraumatic stress disorder (PTSD), is denied.

FINDINGS OF FACT

1. The weight of the medical and other evidence of record is against a finding that the Veteran has an acquired psychiatric disorder, to include PTSD, that had its onset in service or is otherwise related to an event, disease or injury during his military service.

2. An acquired psychiatric disorder, to include PTSD, was not manifest to a compensable degree within one year of his discharge from active duty service. 

CONCLUSION OF LAW

The criteria for entitlement to service connection for an acquired psychiatric disability, to include PTSD, have not been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a), 3.304, 4.125.

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran served on active duty in the U.S. Navy from August 1972 to April 1973. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a February 2014 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama. It was previously before the Board in March 2019 and again in November 2020, where it was remanded or additional development. It now returns for further appellate review. 

The Board notes that, in his September 2015 VA Form 9, the Veteran requested a BVA hearing by live videoconference. The Veteran was scheduled for a videoconference hearing before the Board in January 2019. Pursuant to 38 C.F.R. § 20.704(b), the Veteran was provided adequate notice of the scheduled hearing. See December 2018 and January 2019 VA Correspondence. Without notice and good cause shown, the Veteran failed to appear for the scheduled hearing. Therefore, the Board considers the issue of a hearing waived and the request withdrawn, and the Board will evaluate the appeal on the evidence in the record. See 38 C.F.R. § 20.704(d). 

Neither the Veteran nor his representative have raised any other issues with the duty to notify or duty to assist. VA must notify the claimant of any information, including any medical or lay evidence, not previously provided to VA, that is necessary to substantiate the claim. See 38 U.S.C. § 5103 (2012); 38 C.F.R. § 3.159 (2017); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). VA has satisfied its duties to inform the Veteran in this case. See 38 U.S.C. §§ 5103, 5103A; 38 C.F.R. § 21.1032(a). The duty to notify was satisfied by VCAA / DTA Letter dated November 2013. See also February 2014 VA Rating Decision Narrative, August 2015 Statement of the Case, December 2018 VA Correspondence, January 2019 VA Correspondence, July 2020 Supplemental Statement of the Case (SSOC), and May 2021 SSOC.

VA's duty to assist functions to aid a claimant in obtaining evidence necessary to substantiate a claim, but VA is not required to provide assistance to a claimant when there is no reasonable possibility that assistance would aid in substantiating the claim. See 38 U.S.C. § 5103A (2012). As for VA's assistance to the Veteran, the matter was remanded in November 2020 for the purpose of obtaining VA Mental Disorders and PTSD examinations. See November 2020 BVA Decision; see also 38 U.S.C. § 7104(d)(1); 38 C.F.R. § 4.125. The Veteran cancelled the scheduled examinations. See April 2021 VA Form 21-2507a, Request for Physical Examination ("Spoke with the Veteran's daughter who is POA. She stated she does not want to move forward with the examination.") and May 2021 VA Form 27-0820, Report of General Information ("Called Veteran to confirm that he wants to cancel examination request as annotated in CAPRI. Spoke to Veteran's daughter, who is his legal guardian, and after verifying pertinent information, she stated that due to her father's health and mental disabilities, she does not want to pursue the claim at this time."). 

The Board finds that VA has done everything reasonably possible under 38 C.F.R. § 21.1032(a) to assist the Veteran. The Veteran has not identified any available, outstanding records that are relevant to the claim decided herein, nor is there an indication that any outstanding evidence, relevant to the claim, needs to be obtained. See March 2019 BVA Decision ("the Agency of Original Jurisdiction should attempt to secure (treatment from providers outside VA) records.") and September 2019 VA Subsequent Development Letter ("Please provide the names and addresses of any and all health care providers who have provided treatment for issues on appeal. Specific attention is drawn to the providers identified in your VA treatment records dated April 2013."). All pertinent due process requirements have been met. See 38 C.F.R. § 3.103 (2017). Further development and further assistance by VA are not warranted. 

The RO's efforts have substantially complied with the instructions contained in the March 2019 and November 2020 Board remands. See Stegall v. West, 11 Vet. App. 268 (1998). An additional remand for further development of this claim would serve no useful purpose. Accordingly, the Board finds that no prejudice to the Veteran will result from the adjudication of his claim in this Board decision

1. Entitlement to service connection for an acquired psychiatric disability, to include PTSD 

The Veteran contends that he is entitled to service connection for an acquired mental health condition. See October 2013 VA Form 21-526EZ, Application for Disability Compensation, June 2014 Third Party Correspondence, and September 2015 VA Form 9, Appeal to Board of Veterans' Appeals.

Generally, to prevail on a claim service connection, there must be competent and credible evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus or link between the current disability and the in-service disease or injury. 

Service connection may also be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. See generally 38 C.F.R. § § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). 

Presumptive service connection can satisfy both the elements of an in-service event and a nexus to military service. Chronic diseases listed under 38 C.F.R. § 3.309(a), including psychoses, that manifest either during active service or to a compensable degree within the applicable time limits of 38 C.F.R. § 3.307(a) are sufficient to establish in-service incurrence or aggravation. If a chronic disease enumerated in 38 C.F.R. § 3.309(a) does not manifest in-service or within the applicable time limits, service connection may be granted based on continuity of symptomatology. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Presumptive service connection can also be granted for those diseases listed under 38 C.F.R. § 3.309(b)-(f). 

VA is required to give due consideration to all pertinent medical and lay evidence in evaluating a claim for disability benefits. 38 U.S.C. § 1154 (a). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

Although the credibility of lay evidence may not be refuted solely by the absence of corroborating medical evidence, it is a factor. Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (lay evidence concerning continuity of symptoms after service, if credible, may be competent, regardless of the lack of contemporaneous medical evidence). Other factors are the lapse of time in recollecting events attested to, prior conflicting statements as opposed to consistency with other statements and evidence, internal consistency, facial plausibility, bias, interest, the length of time between alleged incurrence of disability and the earliest or first corroborating medical or lay evidence thereof, and statements given during treatment (which are usually given greater probative weight, particularly if close in time to the onset thereof).

The Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011). Although the Veteran is competent to provide a diagnosis of an observable condition such as a headache, varicose veins, or tinnitus, the Veteran is not competent to provide evidence as to more complex medical questions, such as the etiology of diseases of the genitourinary system. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). 

After the evidence is assembled, it is the Board's responsibility to evaluate the entire record. See 38 U.S.C. § 7104(a). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each issue shall be given to the claimant. See 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102.

Service connection for PTSD requires: 1) medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a), i.e., it conforms to the Diagnostic and Statistical Manual of Mental Disorders (DSM) Fifth Edition, American Psychiatric Association; 2) credible supporting evidence that the claimed in-service stressor occurred; and 3) a link, established by medical evidence, between the current symptoms and the in-service stressor. 38 C.F.R. § 3.304(f). 

The determination as to whether these requirements are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a). The Veteran has been diagnosed with anxiety disorder since July 2014, a diagnosis that was confirmed in November 2015, October 2019, and August 2020. Service connection for anxiety disorder was established for the Veteran in October 2013. 

Under 38 U.S.C. § 1155 and 38 C.F.R. § 4.130, VA ratings for mental disorders, including anxiety, depression, and PTSD, are evaluated together under the same general formula. Under 38 C.F.R. § 4.14, the VA rule against the pyramiding of claims prevents compensation to a Veteran for more than one disability that results from the same disease or injury. See Brady v. Brown, 4 Vet. App. 206 ("the rating schedule may not be employed as a vehicle for compensating a claimant twice (or more) for the same symptomatology").

Factual Background

In January 1973, the Veteran was referred for a psychological consultation. Relevant portions revealed: "The patient is a 17 year old white male Airman Apprentice with 5 months active duty who has become an increasing problem for his squadron. The patient appears to me to be immature personality (atypical personality)...The patient states he is 17 years old and believes that he is too young and immature to be in the service. He describes a great deal on what he considers as injustices against himself 'i.e. disapproval of his living off base.' He admits to 'lying' to build himself up...Oriented to person, place, time and situation. The patient speaks spontaneously at normal rate and rhythm. He verbalizes his thought content in a goal directed manner. Thought content centers on his belief of his immaturity. The patient denies hallucinations, delusions, suicidal ideation or homicidal ideation. Impression 1. No psychiatric illness. 2. Immature personality characterized by inadaptability, ineffectiveness, undependable judgment and reacting to minor stress with fluctuating mood. It is doubtful that retention in the U.S. Navy would aid his maturity." See January 1973 Standard Form 513, Consultation Sheet.

A February 1973 memorandum cited: "Diagnosis: Immature personality characterized by inadaptability, ineffectiveness, undependable judgment and reacting to minor stress with fluctuating mood...has been counseled at great length on many occasions by all personnel and services available to this command to affect change in his behavioral patterns, with no positive results...consistently demonstrates immaturity, flights of fantasy and inability to perform effectively within a military environment. His whimsical requests became so numerous and bizarre that this command felt that it was in (Veteran's) best interests to be evaluated by a psychiatrist...(Veteran) has indicated, on numerous occasions, a desire to be discharged from the Naval Service...it is therefore recommended that Airman Apprentice [REDACTED] be separated from the Navy with an administrative discharge by reason of unsuitability." See February 1973 Department of the Navy Memorandum. 

At his requested separation from the Navy, a physical examination documented, "Normal Psychiatric." See March 1973 Report of Medical Examination. 

January 1977 counseling recorded: "I saw Mr. [REDACTED] initially on May 20, 1976. At that time, the following problems were described: Presenting Complaint: He indicated that he bottles his feelings inside until he reaches the 'point of exploding.' He realizes he is frustrated, has problems of identity, a lowered self-concept, and is afraid of losing control. He has not been able to hold a job for any length and feels that he 'does not belong anywhere'...He had a history of 'nervous stomach,' compulsive eating to relieve anxiety...frequent headaches (anxiety type), frequent anxiety attacks...He was not taking any medication on a regular basis...He has been having emotional problems for some time, but since moving back to Talladega from Florida, these problems of adjustment have become acute. He is acutely anxious, has trouble handling his aggressive feelings, has no satisfying relationship with girls his age, and is experiencing difficulty sleeping...Impression...Schizophrenia, schizo-affective type." See January 1977 Cheaha Mental Health Center Correspondence. 

Social Security Administration records noted a claim for the following conditions: "Diabetes, eyes, feet, legs, nerve damage, [high blood pressure], ulcers, depressed." In response to the question, "When did your illnesses, injuries or conditions first bother you," the Veteran recorded "1997." In response to the question, "When did you become unable to work because of your illnesses, injuries or conditions," the Veteran responded "12/20/2004." See October 2005 Form SSA 3368, Disability Report Adult.

A Social Security Administration psychological evaluation revealed: "Mr. [REDACTED] reported that he experienced some problems with depression and anxiety when he was growing up. He indicated that he began experiencing significant mental health problems after he came off active duty in the U.S. Navy...including being extremely irritable, agitated, and often unable to sleep...He indicated that the severe depression largely remitted after about five years. Mr. [REDACTED] described ongoing problems with some depression and hypomanic episodes over the years. He reported that he became severely depressed and anxious again approximately four years ago. His increased psychiatric difficulties were brought on by his multiple health problems, work stress, family problems, financial difficulties, and a lack of adequate health insurance...Diagnostic Impression (DSM-IV): Bipolar II disorder, depressed, severe without psychotic features, Generalized anxiety disorder, Personality disorder NOS, mixed type with prominent Schizoid & Paranoid personality traits." See December 2005 SSA Report of Psychological Evaluation. 

Additional Social Security Administration records detailed: "Severe Bipolar Disorder...[Generalized Anxiety Disorder]...Mixed [Personality Disorder]...Evidence does not establish the presence of [Organic Mental, Schizophrenic, etc., Affective] criteria...Consultant's Notes: Claimant is alleging a history of depression beginning with being abused as a child. Then he alleges mental treatment secondary to affective problems during his tour in Vietnam. He currently presents with TP MDI of Depression for which he takes Zoloft...He last worked in [October 2004] and quit due to physical problems. It appears that his current affective problems are secondary to his physical problems. A current Psych CE provided MDI's of Severe Bipolar Depressed / GAD / Mixed...While the claimant does allege a number of depressive symptoms, his self-reported ADL's don't look markedly impaired due to mental problems...The social MER indicates that the claimant provides the family shopping responsibilities, relates adequately with family members, and occasionally visits / receives visits from the neighbors. It appears from the additional MER that the MSO noting marked B2 problems is overstated." See January 2006 Form SSA 2506-BK, Psychiatric Review Technique. 

VA treatment in December 2012 indicated: "Veteran reported he has never received psychiatric treatment at the VA previously...He was cooperative throughout the interview and had good eye contact. Speech was normal. Mood was euthymic and affect was congruent. There was no evidence of thought disorder or active psychosis...Thoughts were logical, linear, and goal directed...DSM-IV Diagnostic Impression: Axis I: Anxiety Disorder, NOS; Depressive Disorder, NOS." See December 2012 VA Psychology Note. 

January 2013 VA treatment noted: 1) "Patient reports with medical stressors, at times feeling nervous and little depressed. Patient served in combat in Vietnam in 1972. Patient reports had an experience that was so frightening and upsetting, e.g., 'had to shoot a Vietnamese in the face,' also that he has nightmares about it, thoughts about it when he did not want to" (See January 2013 VA Psychiatry Outpatient Note); and 2) "Will refer Veteran to social work as he endorsed a great deal of concern regarding finances and resources" (See January 2013 VA Mental Health Physician Note).

April 2013 VA treatment revealed: "Veteran continues to be preoccupied with the behaviors of others, his physical pain, and often refuses to take responsibility for his actions. Veteran reported continued stress related to his home life and difficulties in his neighborhood." See April 2013 VA Suicide Risk Assessment Addendum.

VA treatment in May 2013 recorded: "Veteran continues to be focused on physical functioning ('I need new glasses and my teeth fixed; I also need a new CPAP machine, you know they took that away.') and maintains an external locus of control...Diagnostic Impression: Anxiety, Depression, Personality Disorder, NOS with borderline traits." See May 2013 VA Mental Health Physician Note. 

June 2013 VA treatment detailed: "Veteran began session immediately complaining about the pain in his wrist, needing teeth pulled and the financial strain, and needing new eye glasses. Veteran reported that he has been 'excessively grumpy' specifically when the pain in his wrist increases...Veteran at times appeared to try to talk himself into being upset...Veteran explained that he is 'tired of being broke all the time.'" See June 2013 VA Mental Health Physician Note. 

July 2013 VA treatment documented: 1) "Attitude is defensive and irritated. He continues to be focused on blame-placing and avoiding his own responsibility and interactions, casting himself in the role of the victim....Patient demonstrated no delusions, but he continues to demonstrate feelings of victimization...Depressive Disorder NOS, Mood Disorder in conditions classified elsewhere" (See July 2013 VA Psychiatry Note); 2) Diagnostic Impression: Depression, Anxiety, Personality Disorder (Borderline traits), financial hardship, familial discord" (See July 2013 VA Telehealth Clinical Technician Visit Note Addendum); and 3) "Veteran reported that his power has been cut off, but he and his wife have been able to stay with son which is currently working out fine" (See July 2013 VA Administrative Note Addendum). 

VA treatment in August 2013 indicated: 1) "Veteran reported increased depression and anxiety during session related to recent move into son's home and increased marital discord...Veteran endorsed continued financial concerns as well as health related difficulties as the reasons behind ideation...Veteran seems to place a great deal of dependence upon medication helping him feel better as opposed to engaging in different thoughts and behaviors" (See August 2013 VA Suicide Risk Assessment Addendum); and 2) "Received voicemail from Veteran inquiring about his next appointment time. Veteran reported on the message that although he is doing okay he has been feeling a bit stressed, as he and his wife have currently separated" (See August 2013 VA Administrative Note).

January 2014 VA treatment cited: "Caller is frustrated with PTSD and other physical health issues...He has so many physical health problems that he feels that he's really on the edge and needs some mental support so that he can cope with the physical issues. His stress level effects his physical problems, and he's afraid that if he isn't able to deal with the stress that his physical health will continue to decline." See January 2014 VA Suicide Prevention Note.

The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the entire body of evidence. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record but does not have to discuss each piece of evidence). Rather, the Board's analysis will focus specifically on what the evidence shows, or fails to show, on the claim. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant). The most current treatment notes reflect that the Veteran is still receiving mental health treatment from VA. 

Analysis

Contemporaneous medical evidence has greater probative value than the Veteran's reports of history. See Curry v. Brown, 7 Vet. App. 59 (1994). While the contemporaneous medical evidence does not support a diagnosis of PTSD, the medical record does provide evidence of a current diagnosis to satisfy the first element of service connection. See January 1973 Standard Form 513, Consultation Sheet, "No psychiatric illness," January 1977 Cheaha Mental Health Center Correspondence, "Impression...Schizophrenia, schizo-affective type," December 2005 SSA Report of Psychological Evaluation, "Diagnostic Impression (DSM-IV): Bipolar II disorder, depressed, severe without psychotic features, Generalized anxiety disorder, Personality disorder NOS, mixed type with prominent Schizoid & Paranoid personality traits," January 2006 Form SSA 2506-BK, Psychiatric Review Technique, "Severe Bipolar Disorder...[Generalized Anxiety Disorder]...Mixed [Personality Disorder]," December 2012 VA Psychology Note, "DSM-IV Diagnostic Impression: Axis I: Anxiety Disorder, NOS; Depressive Disorder, NOS," May 2013 VA Mental Health Physician Note, "Diagnostic Impression: Anxiety, Depression, Personality Disorder, NOS with borderline traits," and July 2013 VA Telehealth Clinical Technician Visit Note Addendum, "Diagnostic Impression: Depression, Anxiety, Personality Disorder (Borderline traits), financial hardship, familial discord.". 

Unfortunately, the contemporaneous medical evidence does not support an in-service event or nexus to service, elements two and three required for service connection. The Veteran was never diagnosed with a mental health condition in-service. See January 1973 Standard Form 513, Consultation Sheet ("No psychiatric illness") and March 1973 Report of Medical Examination ("Normal Psychiatric"). A report after service by a "Family Counselor" described symptoms as "acute." See January 1977 Cheaha Mental Health Center Correspondence. Further, the Veteran reported the onset of depression in "1997." See October 2005 Form SSA 3368, Disability Report Adult ("When did your illnesses, injuries or conditions first bother you?"). 

Finally, multiple mental health providers listed "health problems, work stress, family problems, financial difficulties" as the source of the Veteran's "psychiatric difficulties." See December 2005 SSA Report of Psychological Evaluation, January 2006 Form SSA 2506-BK, Psychiatric Review Technique, January 2013 VA Mental Health Physician Note, April 2013 VA Mental Health Physician Note, April 2013 VA Suicide Risk Assessment Addendum, May 2013 VA Mental Health Physician Note, June 2013 VA Mental Health Physician Note, July 2013 VA Administrative Note Addendum, August 2013 VA Administrative Note, August 2013 VA Suicide Risk Assessment Addendum, July 2013 VA Administrative Note Addendum, and January 2014 VA Suicide Prevention Note. 

While psychoses are included in the list of chronic diseases enumerated in 38 C.F.R. § 3.309(a), the first recorded mention of a mental health condition is a January 1977 lay statement from a "Family Counselor." Symptoms identified as "adjustment...anxious...trouble handling his aggressive feelings...difficulty sleeping" were described as "acute." See January 1977 Cheaha Mental Health Center Correspondence. Also, the Veteran stated in a Social Security Administration filing that his depression began in "1997." See October 2005 Form SSA 3368, Disability Report Adult. 

Moreover, a psychological assessment stated that the Veteran's mental health symptoms were "secondary to his physical problems." See January 2006 Form SSA 2506-BK, Psychiatric Review Technique. The Veteran is not currently service connected for any disabilities. The Veteran does not meet the requirements for presumptive service connection, either by diagnosis in service, within the prescribed time limits after service, or through continuity of symptomatology, and he is not entitled to the presumption of an in-service incurrence, aggravation in-service, or nexus to service. 

Conclusion

The Board has considered the Veteran's assertions that his mental health-related symptoms are caused by or related to an in-service illness, event, or injury. See Layno v. Brown, 6 Vet. App. 465 (1994); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). However, the Board finds that the reasoned opinion of a medical professional is more probative than the Veteran's lay assertions. Medical treatment staff have expertise, education, and training that the Veteran is not shown to have. The Veteran is not qualified to determine the nature or etiology of any mental health disorder he experiences. No mental health diagnosis was made during the Veteran's brief military service. The Veteran has never been diagnosed with PTSD. No mental health treatment provider has attributed the Veteran's mental health conditions to his military service. 

The Veteran is competent to report on factual matters of which he has firsthand knowledge, e.g., symptoms anxiety and depression. The Board has not overlooked the Veteran's statements regarding the severity of his condition. The Veteran provided lay evidence through VA treatment during the appeal with respect to the presence of mental health-related symptoms. However, where the disability Rating Schedule is concerned, the criteria set forth therein generally require medical expertise where the types of findings required are not readily observable by a lay person. 

The evidence of record is against the Veteran's claim for service connection. The Veteran contends that his claimed disabilities are related to his active service. This opinion is of no probative value because he lacks the medical expertise needed to attribute his mental health-related symptoms to active military service. There is no competent, credible evidence to refute the available medical records. 

The record does not contain any evidence in favor of service connection. The Veteran is not entitled to a presumption of service connection through diagnosis in service, diagnosis within the prescribed time limits after service, or through continuity of symptomatology. The weight of the probative evidence of record is against a finding that the Veteran's symptoms are causally or etiologically related to any disease, injury, or incident, in service. Consequently, service connection is not warranted. 

In sum, a clear preponderance of the evidence of record is against the Veteran's claim for service connection of a mental health condition, and his claim must be denied. The benefit-of-the-doubt rule does not apply when the Board finds that a preponderance of the evidence is against the claim, Ortiz v. Principi, 274 F. 3d 1361, 1365 (Fed. Cir. 2001).

 

 

Robert N. Scarduzio

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board B. Small, Attorney Advisor

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.